Mark Eisen (SBN – 289009)
meisen@edelson.com
EDELSON PC
555 West Fifth Street, 31st Floor
Los Angeles, California 90013
Tel: 213.533.4100
Fax: 213.947.4251

Rafey S. Balabanian*
rbalabanian@edelson.com
Benjamin H. Richman*
brichman@edelson.com
Courtney C. Booth*
cbooth@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Pro hac vice admission to be sought.

Attorneys for Plaintiff and the Putative Class

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| JACK DAVIS, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>APPERIENCE CORPORATION, a Cayman Islands corporation d/b/a IOBIT, and BLUESPRIG, INC., a Delaware corporation d/b/a IOBIT,<br><br>*Defendants*. | Case No: 3:14-cv-766<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>1. **Violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*;**<br>2. **Fraudulent Inducement;**<br>3. **Breach of Contract; and**<br>4. **Breach of the Implied Covenant of Good Faith and Fair Dealing.**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Jack Davis ("Davis") brings this Class Action Complaint ("Complaint") against Defendants Apperience Corporation d/b/a IObit ("Apperience") and BlueSprig, Inc. d/b/a IObit ("BlueSprig") (collectively referred to in the singular as "IObit") seeking relief for injuries that IObit caused to him and a putative class of similarly situated individuals through the deceptive design, marketing, and sale of its Advanced SystemCare PRO software. Plaintiff, for his Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## NATURE OF THE ACTION

1.     IObit develops software that it claims will improve the speed, performance, and stability of a consumer's personal computer ("PC"), protect against privacy risks, remove harmful errors, and improve Internet performance. However, as explained herein, IObit uniformly misleads consumers into purchasing and continuing to use the software at issue in this lawsuit—Advanced SystemCare PRO ("Advanced SystemCare").

2.     First, IObit's marketing materials state that Advanced SystemCare is capable of identifying, reporting, and repairing a wide range of computer errors, as well as privacy and security threats. IObit also claims that Advanced SystemCare will increase a PC's speed and performance, clean out clutter, and optimize Internet speeds.

3.     To demonstrate the functionality of Advanced SystemCare, IObit offers consumers a free, limited trial version of Advanced SystemCare. This trial software allows consumers to conduct diagnostic scans of their computers to detect so-called errors that cause serious computer problems—problems that Advanced SystemCare is supposedly designed to fix. After completing an initial diagnostics scan using the software, Advanced SystemCare alarmingly reports that the consumer's PC is afflicted with thousands of harmful system errors and security threats. Finally, Advanced SystemCare instructs the user that elimination of these purported problems requires purchase of the full, registered version of Advanced SystemCare.

4.     Despite the foregoing, and contrary to IObit's marketing and in-software

representations, neither the free trial version nor the full registered version of Advanced SystemCare *performs any credible assessment* of the computer's condition. Rather, Advanced SystemCare is designed to invariably and ominously report that the consumer's PC needs repair and is at-risk due to the existence of harmful errors, privacy threats, and other computer problems, regardless of the computer's actual status.

5.     The representations described above—both through IObit's marketing and in-software graphics and text—are used to induce consumers into purchasing and continuing to use Advanced SystemCare.

6.     IObit holds itself out as a reputable developer of software designed to protect consumers' computers. Because average consumers lack the requisite technical expertise to understand the underlying functionality of IObit's software, they trust IObit to convey accurate information regarding its products' ability to identify and remove harmful errors and security threats from their computers. Unfortunately, IObit took advantage of that trust, and as a result, it misled thousands of consumers into buying and using its software.

## PARTIES

7.     Plaintiff Jack Davis is a natural person and citizen of the State of Illinois.

8.     Defendant Apperience Corporation is a corporation existing under the laws of the Cayman Islands, with its headquarters and principal place of business located at 665 Third Street, Suite 150, San Francisco, California 94107. Apperience conducts business throughout this District, the State of California, and the United States.

9.     Defendant BlueSprig, Inc. is a corporation existing under the laws of the State of Delaware, with its headquarters and principal place of business located at 665 Third Street, Suite 150, San Francisco, California 94107. BlueSprig conducts business throughout this District, the State of California, and the United States.

**JURISDICTION AND VENUE**

10.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because (a) at least one member of the putative Class is a citizen of a state different from Defendants, (b) the amount in controversy exceeds $5,000,000 exclusive of interest and costs, and (c) none of the exceptions under that subsection apply to this action.

11.     This Court has personal jurisdiction over Defendants because they conduct business in California, are headquartered in California, and the unlawful conduct alleged in the Complaint occurred in, was directed to, and/or emanated from California.

12.     Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendants reside in this District and because the decisions resulting in the unlawful conduct alleged in this Complaint originated in and emanated from this District. Venue is additionally proper because Defendants maintain their headquarters and principal place of business in this District.

**INTRADISTRICT ASSIGNMENT**

13.     Pursuant to Civil Local Rule 3-2(d), this case shall be assigned to the San Francisco Division.

**FACTUAL BACKGROUND**

**I.     An Overview of IObit.**

14.     IObit is a multi-national developer of so-called computer utility software—that is, software designed to repair, protect, and enhance a computer's operations. On its website, IObit claims that it makes "easy-to-use and powerful solution[s] to improve your computer's performance and security" and otherwise "provides consumers with innovative system utilities and security software for superior PC performance and security."[1] IObit also boasts that "[w]ith more than 100 awards and 150 million downloads worldwide, [it has become] a recognized industry leader in PC optimization and security software."[2]

---

[1]     IObit About Us, http://www.iobit.com/about.php (last accessed February 19, 2014).

[2]     *Id.*

15.     IOBit's "award-winning product" is Advanced SystemCare, which, according to the company, is designed to, "protect your system from virus attack[s]" and "improve your computer's performance and security."[3] Now in its seventh version,[4] IObit claims that over 150 million people in 220 countries use Advanced SystemCare.[5]

## II.     IObit Tricks Consumers into Purchasing Advanced SystemCare Through a Common Deceptive Scheme.

16.     IObit promotes Advanced SystemCare, through sponsored online advertisements and on its website, as software capable of improving the speed, performance, and stability of a consumer's PC. Likewise, Defendant represents that Advanced SystemCare protects against privacy risks, removes harmful errors, and improves Internet performance. For example, if a consumer searches the World Wide Web for software to repair a damaged computer, eliminate privacy risks, or generally increase the speed or performance of a PC, they will likely encounter advertisements for Advanced SystemCare substantially similar to those shown in Figures 1-3 below:

**IObit**: Speed Up Slow **Computer**, Keep **PC** and Internet Secure ...
www.iobit.com/ ▾
Builds high-performing software products to free speed up **computer**, fix & clean registry and malware, optmize **PC** games, tune up **Windows 7, Vista, XP**, etc.
Advanced SystemCare - Products - Menu 8 - Advanced SystemCare 7 PRO

(**Fig. 1.**)

---

[3]      *Id*.

[4]      On information and belief, although the graphical user interface of Advanced SystemCare varies by version, each iteration of the software has substantially similar functionality. As such, the representations and Figures in this Complaint variously refer to Advanced SystemCare versions 4-7 for illustration.

[5]      IObit About Us, http://www.iobit.com/about.php (last accessed February 19, 2014) (emphasis in original).

**Advanced SystemCare 7 ® - iobit.com**
www.iobit.com/Official-Site ▾
Protect, Fix & SpeedUp your PC Try All-in-one Solution & Protection!
Advanced SystemCare 7 - Hot Deals - Store - Driver Booster PRO

(**Fig. 2.**)

**Advanced SystemCare Free 7/6/5/4/3 Download Review for ... - IObit**
www.iobit.com › Products ▾
Advanced SystemCare 7 Free takes a one-click approach to protect, repair, clean, and
**optimize** your **PC**. With over 150 MILLION downloads worldwide, this ...

(**Fig. 3.**)

17.     When a consumer clicks on an advertisement or hyperlink to IObit's website they
are redirected to www.iobit.com and are presented with representations about Advanced
SystemCare's utility. Specifically, IObit's website says that the software will perform the
following functions:

- "Speed Up your computer in just one click!";
- "[P]rovide[] an always-on, automated, all-in-one PC Healthcare Service with anti-spyware, privacy protection, performance tune-ups, and system cleaning capabilities.";
- "[F]ix[] stubborn errors, clean[] out clutter, optimize[] Internet and download speeds, ensure[] personal security, and maintain[] maximum computer performance automatically.";
- "Boost[], clean[], and fix[] all kinds of PC problems automatically";
- "Speed[] up PC startup, Internet connection, and the whole performance";
- "Protect[] you against spyware and adware in real time";
- "Organize[] system resources intelligently for maximum PC performance";
- "Double or triple the speed of your old and slow PC"; and,
- "Clean and repair 200% more Registry errors for better reliability".

18.     In addition to these representations, IObit also makes the following promises about
Advanced SystemCare:

- "A simple registry cleaner cannot give you true performance boost. Advanced SystemCare Pro [] combines Registry clean, defrag, system tune-up, shortcut fix, privacy sweep, junk files clean, disk fix and optimization, and more, to guarantee your PC run[s] like a new one.";

- "[S]cans and repairs ten PC problems and protects your PC from hidden security threats…."; and,

- "With our Innovative 'DEEP SCAN' technology, Advanced SystemCare PRO [] has the highest detection rate in the industry and it is able to find the right root of your PC trouble.".

19.    But IOBit's statements don't accurately reflect Advanced SystemCare's true capabilities. The truth is, at its core, Advanced SystemCare performs three primary optimization functions: it's a registry cleaner,[6] it defragments a PC's hard drive,[7] and it removes superfluous "temporary" files. From a technical standpoint, these functions don't come close to IObit's representations about the software's features. For instance, in reality none of these will, "fix stubborn errors . . . ensure personal security . . . double or triple the speed of your old and slow PC . . . [or] . . . protect[] your PC from hidden security threats."

20.    After consumers—most of whom are searching for software to fix seriously malfunctioning computers—are informed that Advanced SystemCare is capable of performing the tasks identified above, the second phase of IOBit's scheme is triggered: convincing the software's users that their computers are afflicted by errors that cause the harmful problems identified in its marketing materials, and that purchase and continued use of Advanced SystemCare is necessary to

---

[6]    "Registry cleaner" software is a type of utility program designed to remove unwanted or redundant items from the Microsoft Windows operating system registry. The "registry" is a database of configuration settings that help facilitate the operation of computer applications in the operating system.

[7]    "Defragmentation" refers to the process of consolidating or reorganizing fragmented data on a volume (such as a computer hard drive).

fix them.

**III.    Advanced SystemCare Invariably Reports Benign Errors as Harmful to Induce Consumers to Purchase and Continue to Use the Full Version of the Software.**

21.    After a consumer downloads and installs Advanced SystemCare, the software immediately warns that the computer's "PC health" is "Poor" and encourages performing a "Deep Care" scan to determine what's causing the problems. *See* Figure 4 (showing a screenshot of Advanced SystemCare's initial system scan interface).



(**Fig. 4.**)

22.    After performing a scan, Advanced SystemCare displays a warning to the user in an alarmist fashion—using ominous yellow on black typeface and an alert sign graphic—that thousands of serious problems on the computer need to be repaired. *See* Figure 5 below (showing a screenshot of Advanced SystemCare's error reporting interface). Advanced SystemCare also displays a categorized list of the problems purportedly detected by the software's scan. *See id*.

\*                    \*                    \*



(**Fig. 5.**)

23.     If the user is running the trial version of Advanced SystemCare, the software will remove a handful of "security threats" and "system errors" detected by its free diagnostics scan, but indicates that it will not repair all of them unless the user purchases the full, registered version. *See* Figures 6 and 7 (showing a screenshots of Advanced SystemCare prompting the user to purchase the full version in order to fix all threats, system errors, and performance settings).

(**Fig. 6.**)



(**Fig. 7.**)

24.    The truth, however, is that Advanced SystemCare's scan results are simply scare tactics—common to the utility software industry—used to mislead consumers into purchasing and continuing to use the full version of the software.

25.    In reality, Advanced SystemCare *invariably* reports that a computer is harmed by "system errors" and "security threats"—regardless of whether these problems actually exist or are hurting the computer's condition. Ostensibly, these representations mislead the user into believing that the computer is damaged, and or at risk, and that purchase and continued use of Advanced SystemCare is necessary to "repair" or "fix" these problems. Moreover, Advanced SystemCare identifies harmless files as "errors" or "threats," without actually assessing whether they pose any risk to a computer's operations or security.

26.    For example, Figure 5 on the previous page shows the results of an Advanced SystemCare diagnostic scan *on a brand new computer*. According to the scan, the computer has "thousands" of problems, and hundreds of "system errors" and "security threats" that cannot be repaired without upgrading to the full version of the software.

27.    With respect to Advanced SystemCare's method for reporting individual errors, the software mischaracterizes the severity of harmless files to further convince consumers that their computers are damaged and or at-risk. For example, Figure 8 below shows Advanced SystemCare

reporting an empty registry key as "High" priority.

(**Fig. 8.**)

28.     Contrary to the software's assessment, however, empty registry keys are benign items that don't, *ipso facto*, impede or adversely affect the normal operations of a computer. Accordingly, Advanced SystemCare's claim that empty registry keys are "High" priority issues is merely a tactic used to drive up the total number of "system errors" reported to users.

29.     Not only does Advanced SystemCare detect and mischaracterize non-damaging items as "system errors" and "security threats," the software also identifies naturally recurring log files as problems. For example, Figure 9 below show files produced through the normal use of web browser. These files will be automatically regenerated during a computer's regular course of operations (*i.e.,* while a person browses the World Wide Web).

\*                    \*                    \*



(**Fig. 9.**)

30.      The problem with identifying these log files as issues is that Advanced SystemCare will virtually *always* report that certain files—files not actually detrimental to a PC's performance—are impacting the computer's condition.

31.      Through the practices described above, IObit has profited, and continues to profit, by misleading consumers into believing that their computers are riddled with serious system and security errors, and that the purchase (typically at a cost of $23.98)—and continued use of the Advanced SystemCare software is necessary to "repair" these problems.

## IV.   IObit is Not Alone in its Fraudulent Conduct.

32.      Unfortunately for consumers, IObit is not alone in its use of the sorts of fraudulent programmatic design and marketing practices at issue in this case. Rather, the utility software industry has been fraught with these tactics for over a decade. Only recently, however, have software developers—like IObit and its competitors—been called to account for profiting off of consumers who are unable to identify the misleading design and methodologies underlying this "performance-enhancing" software.

33.      Indeed, numerous lawsuits have been filed against well-known competitors of IObit

(*e.g.*, Symantec Corp. and AVG Technologies)—including several by Plaintiff's counsel here—alleging similar claims related to the fraudulent design and marketing of so-called utility software products. Several of those cases have resulted in class-wide settlements and industry-changing modifications to the software products at issue—making their detection, reporting and repairing mechanisms far more transparent and more accurate when it comes to informing consumers of the threats posed by existing problems on their computers—and still others are being actively litigated. Rather than make the necessary changes to its software so that it *actually* detects, reports and repairs harmful threats and problems on users' PCs, IObit continues to profit through its fraudulent conduct

## V.   Plaintiff Davis's Experience.

34.     On or about April 28, 2011, Plaintiff Davis performed an Internet search for software that would optimize and improve the performance of his PC. One of the results displayed was an Advanced SystemCare advertisement was substantially similar to those depicted in <u>Figures 1-3</u> above.

35.     After clicking on the advertisement, Davis was redirected to one of IObit's websites (www.iobit.com), where he was presented with (and read) advertisements substantially similar to those depicted in <u>Figures 10-13</u> and described in Paragraphs 17-19 for Advanced SystemCare.



(**Fig. 10.**)



(**Fig. 11.**)



(**Fig. 12.**)



(**Fig. 13.**)

36.     Relying upon these representations made by IObit—namely, that Advanced System would "fix[] stubborn errors, clean[] out clutter, optimize[] Internet and download speeds, ensure[] personal security, and maintain[] maximum computer performance" and otherwise optimize and improve the performance of his computer—Davis purchased and downloaded the software for $23.40. Davis purchased Advanced SystemCare under the belief—created by IObit's representations—that the software would accurately assess the condition of his computer and would eliminate and repair problems that lead to poor computer performance.

37.     Upon running Advanced SystemCare for the first time, the software indicated to Davis that his computer was afflicted with thousands of problems and displayed graphical representations reflecting the same. Because IObit designed its software to invariably report that

problems were afflicting users' computers, Defendant misled Davis into believing that his computer was actually riddled with problems that were supposedly impacting its performance—although no credible assessment of the computer occurred.

38.     Further, through the software's design, IObit deceived Davis into thinking that Advanced SystemCare was making meaningful repairs to his computer, thus he elected to continue using the program rather than seeking a refund. Davis was also deceived by the software's representations that it was removing harmful problems and threats from his computer.

39.     In reality, and as described above, Advanced SystemCare did not actually detect thousands of problems as IObit claimed because the software arbitrarily reported supposed problems and could not actually perform the beneficial tasks described in its marketing materials and advertisements. Nor did the software accurately identify and report the actual condition of Davis's computer.

40.     In fact, every time Davis ran Advanced SystemCare, he recalls that the software reported that problems and threats were adversely affecting his computer and that he needed to repair the problems and threats using Advanced SystemCare. Yet, despite the fact that he repeatedly ran Advanced SystemCare's system scan, and purportedly "repaired" the reported problems and threats, his computer continued to suffer from the same problems he experienced prior to purchasing and running the software. In other words, even after using Advanced SystemCare to optimize and repair his computer, the speed and performance of his computer failed to improve.

41.     Davis reasonably relied upon IObit's representations about Advanced SystemCare's utility, in that he believed the software would actually perform the operations described in its marketing materials and advertisements. But for these representations, Davis would not have purchased and continued to use the software.

## CLASS ALLEGATIONS

42.     **Class Definition**: Plaintiff Davis brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (3) on behalf of himself and a class of similarly situated individuals, defined as

follows:

>All individuals and entities in the United States and its territories that purchased IObit's Advanced SystemCare software.

Excluded from the Class are (1) Defendants, Defendants' agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendants or their parents have a controlling interest, and those entities' current and former employees, officers, and directors, (2) the Judge or Magistrate Judge to whom this case is assigned and the Judge's or Magistrate Judge's immediate family, (3) persons who execute and file a timely request for exclusion, (4) persons who have had their claims in this matter finally adjudicated and/or otherwise released, and (5) the legal representatives, successors, and assigns of any such excluded person.

43.     **Numerosity**: The exact number of Class members is unknown and is not available to Plaintiff at this time, but on information and belief, IObit has sold its software to thousands of Class members throughout the country, making joinder of each individual member impracticable. Ultimately, the Class members will be easily identified through IObit's records.

44.     **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the other members of the Class, and those questions predominate over any questions that affect individual members of the Class. The common questions include but are not necessarily limited to:

>a)     whether Advanced SystemCare is designed to mislead consumers into purchasing and continuing to use the full version of the software;
>
>b)     whether IObit intentionally misrepresented the functionality of Advanced SystemCare;
>
>c)     whether IObit's conduct described herein constitutes violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*;
>
>d)     whether IObit's conduct described herein constitutes fraudulent inducement;
>
>e)     whether IObit's conduct described herein constitutes breach of contract;

and,

f)     whether IObit's conduct described herein constitutes a breach of implied covenant of good faith and fair dealing.

45.     **Typicality**: Plaintiff's claims are typical of the claims of the other members of the Class. Plaintiff and the Class sustained damages as a result of IObit's uniform wrongful conduct during transactions with Plaintiff and the Class.

46.     **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in complex litigation and class actions. Plaintiff has no interests antagonistic to those of the Class, and IObit has no defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and have the financial resources to do so.

47.     **Policies Generally Applicable to the Class**: This class action is appropriate for certification because IObit has acted or refused to act on grounds generally applicable to the Class as a whole. Such uniform conduct requires the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members, thus making final injunctive and/or declaratory relief appropriate with respect to the Class as a whole. Further, because IObit's uniform practices result in similar, if not identical, injuries for all Class members, Plaintiff's challenge of those practices hinges on IObit's conduct with respect to the Class, not on facts or law applicable only to Plaintiff.

48.     **Superiority**: This case is also appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy. The injuries suffered by the individual members of the Class are likely to have been relatively small compared to the burden and expense of individual prosecution of the litigation necessitated by IObit's actions. Absent a class action, it would be difficult, if not impossible, for the individual members of the Class to obtain effective relief from IObit. Even if members of the Class themselves could sustain such individual litigation, it would not be preferable to a class

1   action because individual litigation would increase the delay and expense to all parties and the

2   Court and require duplicative consideration of the legal and factual issues presented herein. By

3   contrast, a class action presents far fewer management difficulties and provides the benefits of

4   single adjudication, economy of scale, and comprehensive supervision by a single Court.

5   Economies of time, effort, and expense will be fostered, and uniformity of decisions will be

6   ensured.

7        49.    Plaintiff reserves the right to revise the foregoing "Class Allegations" and "Class

8   Definition" as necessary based upon information learned in discovery.

9                         **FIRST CAUSE OF ACTION**
                **Violations of California's Unfair Competition Law**
10               **Cal. Bus. & Prof. Code §§ 17200, *et seq.***
                    **(On Behalf of Plaintiff and the Class)**

11       50.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

12       51.    California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*

13   ("UCL"), protects both consumers and competitors by promoting fair competition in commercial

14   markets for goods and services.

15       52.    The UCL prohibits any unlawful, unfair, or fraudulent business acts or practices. A

16   business practice need only meet one of the three criteria to be considered unfair competition.

17       53.    The utility of a consumer product is a material term of any transaction because it

18   directly affects a consumer's choice of, or conduct regarding, whether to purchase the product.

19   Therefore, any deception or fraud related to the utility of a product is materially misleading.

20       54.    Likewise, the price of a consumer product is a material term of any transaction

21   because it directly affects a consumer's choice of, or conduct regarding, whether to purchase a

22   product. Any deception or fraud related to the price of a product is materially misleading.

23       55.    As described herein, IObit engaged in fraudulent and unfair business practices, as

24   defined by the UCL, by, *inter alia*: (i) misrepresenting the utility of Advanced SystemCare to

25   consumers, including through the assertions depicted in Figures 1-3 and 10-13 and as described in

26   Paragraphs 17-19 above; (ii) misrepresenting the results of the diagnostic scans to consumers (*i.e.*,

the overall condition of users' computers) through in-software representations; (iii) using the misrepresentations to induce consumers to purchase and continue to use Advanced SystemCare; and (iv) selling software that lacks the advertised utility, similarly produced false diagnostic reports, and was otherwise incapable of functioning as IObit represented it would.

56. Specifically, IObit affirmatively represented to Plaintiff that Advanced SystemCare software would honestly and accurately scan his computer for harmful threats and problems, increase his computer's speed and stability, increase the speed of his Internet connection, and protect his computer from harmful problems or errors. Further, through the software itself, IObit affirmatively represented that thousands of harmful problems and threats existed on Plaintiff's computer.

57. The above affirmative representations, including many of the results of the "diagnostic scan" provided by the software were, in fact, false. Advanced SystemCare did not perform a credible evaluation of the Plaintiff's computer, was programmed to misrepresent the state of users' computers, and did not function as IObit represented.

58. IObit has violated the "fraudulent" prong of the UCL by intentionally designing the software to report fake problems and threats with the intent to defraud consumers into purchasing and continuing to use its software products. A reasonable consumer is likely to, and Plaintiff and the Class did, rely on IObit's misrepresentations regarding the benefits offered by the software inasmuch as they purchased and continued to use the software, which ultimately lacked the advertised utility.

59. IObit has also violated the "unfair" prong of the UCL by causing substantial injury to consumers through the conduct alleged above. Further, the injuries caused by IObit's unfair conduct are not outweighed by any countervailing benefits to consumers or competition, and they could not reasonably have been foreseen and avoided by consumers. Given the information asymmetry between IObit and consumers regarding Advanced SystemCare's functionality, Plaintiff and the Class could not have reasonably known of the falsity of IObit's representations or avoided the harm they caused.

60. IObit's fraudulent and unfair conduct occurred during the marketing and sale of computer software products and therefore occurred during the course of the IObit's business practices.

61. Much of this fraudulent and unfair conduct occurred out of and emanated from IObit's California offices and headquarters.

62. IObit's fraudulent and unfair conduct directly and proximately caused Plaintiff and the Class actual monetary damages in the form of the purchase price of the software, or some portion thereof.

63. Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiff seeks an order (i) enjoining IObit from continuing to engage in the fraudulent and unfair conduct described herein, (ii) awarding Plaintiff and the Class all appropriate damages, and (iii) awarding reasonable costs and attorneys' fees pursuant to Cal. Code Civ. Proc. § 1021.5.

## SECOND CAUSE OF ACTION
### Fraudulent Inducement
### (On Behalf of Plaintiff and the Class)

64. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

65. As depicted with particularity in the Figures above, and as described throughout all paragraphs of this Complaint, IObit has used, and continues to use, marketing tactics it knows or reasonably should know are false and misleading.

66. To induce Plaintiff and members of the putative Class to purchase and continuing to use the software, IObit affirmatively represented to Plaintiff and Class members that Advanced SystemCare possessed certain utility. Specifically, IObit represented that Advanced SystemCare would increase the speed, security, and performance of their computers by detecting and repairing harmful threats and problems, and would otherwise perform beneficial tasks such as those depicted in Figures 1-3 and 10-13 and as described in Paragraphs 17-19 above. Further, through the software itself, IObit affirmatively represented that thousands of problems and threats existed on Plaintiff's PC.

67. IObit's affirmative representations were, in fact, false. In particular, Advanced

SystemCare does not increase a computer's performance or speed in the manner IObit described, nor does it protect the user's security as promised. Likewise, IObit's representations through the software itself were false inasmuch as the software did not (and could not) conduct credible diagnostics of a computer's condition, and was programmed to misrepresent the condition of a computer.

68.     The utility of a consumer product is a material term of any transaction because it directly affects a consumer's choice of, or conduct regarding, whether to purchase a product. Any deception or fraud related to the utility of a product is materially misleading.

69.     As the software's developer, IObit knew that its representations regarding Advanced SystemCare's utility were false. IObit intentionally designed its public representations to mislead consumers about the software's utility, and programmed the software to misrepresent and overstate computer problems and threats and to deceive users about the condition of their computers.

70.     IObit made its misrepresentations specifically to induce Plaintiff and the Class to rely upon them by purchasing and continuing to use the software. Plaintiff and the Class did in fact rely upon these misrepresentations and purchased and continued to use Advanced SystemCare to their detriment.

71.     As a consumer lacking the requisite technical expertise to independently gauge the software's underlying functionality and taking IObit's statements at face value, Plaintiff justifiably relied upon the above representations. Plaintiff would not have purchased Advanced SystemCare but for the misrepresentations that the software would perform the beneficial tasks advertised.

72.     By using false and fraudulent marketing tactics that misrepresent the actual utility of Advanced SystemCare, and inducing Plaintiff and the Class to purchase and continue to use the software based on those misrepresentations, IObit has engaged in fraudulent practices designed to mislead and deceive consumers.

73.     As a result of relying on IObit's misrepresentations, Plaintiff has been damaged in the amount of the purchase price of the Advanced SystemCare software, or a portion thereof.

74.     Plaintiff therefore prays for relief in the amount of the purchase price (or a portion thereof) of the Advanced SystemCare. Plaintiff further alleges that IObit's conduct and misrepresentations were made with malice and in conscious disregard for Plaintiff's and the Class's rights, thereby entitling them to punitive damages against IObit in an amount sufficient to deter such conduct in the future.

### THIRD CAUSE OF ACTION
**Breach of Contract**
**(On Behalf of Plaintiff and the Class)**

75.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

76.     Plaintiff and the Class members entered into agreements with IObit whereby IObit agreed to sell, and Plaintiff and the Class agreed to purchase, software that would detect and remove legitimate computer problems and threats from Plaintiff's and the Class's computers and improve the computer's speed and performance.

77.     Based on the foregoing representations, Plaintiff and the Class paid, and IObit accepted, Advanced SystemCare's purchase price, and therefore performed their obligations under the contracts.

78.     As such, IObit voluntarily assumed a contractual obligation to honestly diagnose and report problems and threats on Plaintiff's and the Class members' computer systems and then to remove or repair those problems. Although this obligation is a material term of the agreement, IObit did not honor it.

79.     IObit breached its contracts with Plaintiff and the Class by failing to honestly and accurately inform them about the true condition of their computers, and further by providing software that failed to offer the benefits promised.

80.     The aforementioned breaches of contract have proximately caused Plaintiff and the Class economic injury and other damages, because they purchased a product that does not perform as represented by IObit, and that lacked the promised and paid-for utility.

**FOURTH CAUSE OF ACTION**
**Breach of the Implied Covenant of Good Faith and Fair Dealing**
**(On Behalf of Plaintiff and the Class)**

81. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

82. In order to benefit from Advanced SystemCare's supposed optimization, repair, and threat-removal software, Plaintiff and the Class affirmatively allowed IObit to install Advanced SystemCare on their computer systems.

83. IObit's agreement to install software to diagnose and remove problems and threats from consumers' computers in exchange for a fee is a valid and enforceable contract between Plaintiff and the Class on the one hand, and IObit on the other.

84. IObit breached the provisions of that agreement, specifically by not honoring its responsibilities to perform truthful diagnostic and remedial operations upon installation and/or payment.

85. California contract law recognizes the implied covenant of good faith and fair dealing in every contract.

86. Implicit in the contract were provisions prohibiting IObit from engaging in conduct that frustrated or injured Plaintiff's and the Class members' rights to receive the agreed-upon benefits of the contract.

87. Plaintiff and the Class sought to receive the bargained-for benefit of obtaining a software product that performed truthful diagnostic and remedial operations as advertised by IObit.

88. Rather than provide the bargained-for benefit to Plaintiff and the Class, IObit provided software that falsely represented the condition of users' computers and otherwise failed to perform its advertised functions. IObit's conduct frustrated Plaintiff's and the Class's rights to receive the benefits of the contract by creating the illusion that the benefits were supplied (when in fact, they were not), and leading Plaintiff and the Class to believe that their contracts had been fulfilled.

89. IObit's misconduct and breach of the implied covenant of good faith and fair dealing as described herein resulted in injury to Plaintiff and the Class in the form of the price paid

in excess of Advanced SystemCare's actual utility that was knowingly and wrongfully retained by IObit.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Jack Davis, on behalf of himself and the Class, respectfully requests that this Court issue an order:

A.      Certifying this case as a class action on behalf of the Class defined above, appointing Jack Davis as class representative, and appointing his counsel as class counsel;

B.      Declaring that IObit's actions, as set out above, violate California's Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200, *et seq.*), and constitute fraudulent inducement, breach of contract, and breach of the implied covenant of good faith and fair dealing;

C.      Awarding damages, including statutory and punitive damages where applicable, to Plaintiff and the Class in an amount to be determined at trial;

D.      Awarding injunctive and other equitable relief as is necessary to protect the interests of the Class, *inter alia*: (i) an order prohibiting IObit from engaging in the wrongful and unlawful acts described herein; (ii) requiring IObit to disclose and admit the wrongful and unlawful acts described herein; and (iii) requiring IObit to fully disclose the true nature of its software products now and in the future;

E.      Awarding Plaintiff and the Class their reasonable litigation expenses and attorneys' fees;

F.      Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable;

G.      Providing such other injunctive and/or declaratory relief as is necessary to protect the interests of Plaintiff and the Class; and,

H.      Awarding such other and further relief as equity and justice may require.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury for all claims so triable.

Respectfully submitted,

**JACK DAVIS**, individually and on behalf of all others similarly situated,

Dated: February 19, 2014

By: /s/ Mark Eisen

One of Plaintiff's Attorneys

Mark Eisen (SBN – 289009)
meisen@edelson.com
EDELSON PC
555 West Fifth Street, 31st Floor
Los Angeles, California 90013
Tel: 213.533.4100
Fax: 213.947.4251

Rafey S. Balabanian*
rbalabanian@edelson.com
Benjamin H. Richman*
brichman@edelson.com
Courtney C. Booth*
cbooth@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Pro hac vice admission to be sought.