SQUIRE PATTON BOGGS (US) LLP
Joseph A. Meckes  (CA Bar #190279)
   Email: joseph.meckes@squirepb.com
275 Battery Street, Suite 2600
San Francisco, CA  94111
Telephone:   +1 415 954 0200
Facsimile:   +1 415 393 9887

Scott A. Kane (*pro hac vice*)
Colter L. Paulson (*pro hac vice*)
Email: scott.kane@squirepb.com
         colter.paulson@squirepb.com
221 E. Fourth St., Suite 2900
Cincinnati, OH  45202
Telephone:   +1 513 361 1200
Facsimile:   +1 513 361 1201

Attorneys for Defendants Apperience Corporation
and BlueSprig, Inc.

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JACK DAVIS, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>APPERIENCE CORPORATION, a Cayman Islands corporation d/b/a IOBIT, and BLUESPRIG, INC., a Delaware corporation d/b/a IOBIT,<br><br>        Defendants. | Case No.  3:14-cv-766-WHA<br><br>**DEFENDANTS APPERIENCE CORPORATION AND BLUESPRIG, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS THE AMENDED COMPLAINT**<br><br>Date:    October 16, 2014<br>Time:    8:00 a.m.<br>Place:   Courtroom 8, 19th Floor<br>          Hon. William H. Alsup<br><br><br>Action Filed:  February 19, 2014<br>Trial Date:    TBD |

# TABLE OF CONTENTS

**Page(s)**

MEMORANDUM OF POINTS AND AUTHORITIES ............................................................... 1

I.       INTRODUCTION ...................................................................................................... 1

II.      BACKGROUND ........................................................................................................ 2

III.     ARGUMENT .............................................................................................................. 5

    A.     The UCL Claims Should Be Dismissed Because Plaintiff Has Not Alleged
       A Sufficient Connection Between This Dispute And California ......................... 5

    B.     Both The UCL and Fraudulent Inducement Claims Fail to Plead Fraudulent
       Conduct With Particularity ............................................................................... 9

         1.     The FAC Fails to Allege Facts Showing That Plaintiff Was
            Defrauded ............................................................................................. 10

         2.     Allegations Regarding Which Products Are At Issue Are Confused ....... 13

         3.     The FAC Does Not Distinguish Between the Two Defendants ............... 13

    C.     The FAC Fails Plausibly To Allege a Claim for Fraudulent Inducement or
       a UCL Claim Based in Fraud ........................................................................... 14

         1.     Plaintiff's Own Allegations Show He Was Not the Victim of Fraud ....... 14

         2.     Plaintiff's Characterizations of Certain Representations Are
            Contradicted by the Representations Themselves ................................... 15

    D.     The Breach of Contract Claim Must Be Dismissed ............................................ 17

    E.     The Claim for the Breach of the Covenant of Good Faith and Fair Dealing
       Must Be Dismissed .......................................................................................... 19

IV.      CONCLUSION ......................................................................................................... 19

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Alvarez v. Chevron Corp.*,
5
    656 F.3d 925 (9th Cir. 2011) ................................................................................................. 18

6

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................................................... 9
7

*Bell Atl. Corp. v. Twombly*,
8
    550 U.S. 544 (2007) .......................................................................................................... 9, 14

9

*Bilodeau v. McAfee, Inc.*,
10
    2013 U.S. Dist. LEXIS 89226 (N.D. Cal. June 24, 2013) ........................................... *passim*

11
*Cox v. Reliance Std. Life Ins. Co.*,
    2014 U.S. Dist. LEXIS 29773 (E.D. Cal. Mar. 3, 2014) ................................................14, 15
12

13
*Gross v. Symantec Corp.*,
    2012 U.S. Dist. LEXIS 107356 (N.D. Cal. July 31, 2012) ........................................1, 8, 9, 12

14

*Haskins v. Symantec Corp.*,
15
    2013 U.S. Dist. LEXIS 169865 (N.D. Cal. Dec. 1, 2013) .................................................... 18

16
*Ice Cream Distribs. of Evansville v. Dreyer's Grand Ice Cream*,
    2010 U.S. Dist. LEXIS 99930 (N.D. Cal. Sept. 10, 2010) ...................................................... 8
17

18
*In re iPhone 4S Consumer Litig.*,
    2014 U.S. Dist. LEXIS 19363 (N.D. Cal. Feb. 14, 2014) ..................................................... 18

19
*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ................................................................................................ 9
20

21
*Knievel v. ESPN*,
    393 F.3d 1068 (9th Cir. 2005) ................................................................................................ 2

22
*Lee v. City of Los Angeles*,
23
    250 F.3d 668 (9th Cir. 2001) .................................................................................................. 7

24
*Lothlen v. Wells Fargo Bank, N.A.*,
    2014 U.S. Dist. LEXIS 42310 (N.D. Cal. Mar. 27, 2014) .................................................... 19
25

26
*Norwest Mortgage, Inc. v. Superior Court*,
    72 Cal. App. 4th 214 (1999) ................................................................................................... 5

27
*O'Connor v. Uber Techs., Inc.*,
28
    2013 U.S. Dist. LEXIS 171813 (N.D. Cal. Dec. 5, 2013) .................................................... 18

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

*Raisin Bargaining Ass'n v. Hartford Cas. Ins. Co.*,
2010 U.S. Dist. LEXIS 101415 (E.D. Cal. Sept. 7, 2010) ...................................................... 18

*Rasmussen v. Apple Inc.*,
2014 U.S. Dist. LEXIS 35352 (N.D. Cal. Mar. 14, 2014) ...................................................... 11

*Rubio v. U.S. Bank, N.A.*,
2014 U.S. Dist. LEXIS 45677 (N.D. Cal. Mar. 31, 2014) ...................................................... 17

*Semegen v. Weidner*,
780 F.2d 727 (9th Cir. 1985) ...................................................................................................... 10

*Swartz v. KPMG LLP*,
476 F.3d 756 (9th Cir. 2007) ...................................................................................................... 10

*Synopsys, Inc. v. Atoptech, Inc.*,
2013 U.S. Dist. LEXIS 153089 (N.D. Cal. Oct. 24, 2013) ...................................................... 19

*Tidenberg v. Bidz.com, Inc.*,
2009 U.S. Dist. LEXIS 21916 (C.D. Cal. Mar. 4, 2009) ...................................................... 5, 7, 9

*U.S. Bank, N.A. v. PHL Variable Ins. Co.*,
2012 U.S. Dist. LEXIS 64029 (C.D. Cal. April 26, 2012) ...................................................... 5

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003) ...................................................................................................... 9

*Wolf v. Wells Fargo Bank, N.A.*,
2011 U.S. Dist. LEXIS 117835 (N.D. Cal. Oct. 12, 2011) ...................................................... 11

*Zamanyan v. Northland Group, Inc.*,
2012 U.S. Dist. LEXIS 96960 (C.D. Cal. July 9, 2012) ...................................................... 14

**Statutes & Rules**

Bus. & Prof. Code § 17200, *et seq.* ...................................................................................... *passim*

Fed. Rule of Civ. Proc. 9(b) ...................................................................................................... 9

Fed. Rule of Civ. Proc. 12(b)(6) ...................................................................................................... 17

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

NOTICE IS HEREBY GIVEN that on October 16, 2014 at 8:00 a.m., or as soon thereafter as the matter may be heard by the above-entitled Court, Defendants Apperience Corporation and BlueSprig, Inc. ("Defendants") will and hereby do move, pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss each of the claims for relief asserted in the Amended Complaint.

Plaintiff's First Cause of Action should be dismissed pursuant to Rule 12(b)(6) because California Business & Professions Code section 17200 *et seq.* does not extend to the harm allegedly suffered by Plaintiff, a resident of Illinois.  Plaintiff's First Cause of Action should also be dismissed because it is a claim sounding in fraud, but which fails to plead the facts constituting the alleged fraud with particularity.

Plaintiff's Second Cause of Action for fraudulent inducement should also be dismissed because it is a claim sounding in fraud, but which fails to plead the facts constituting the alleged fraud with particularity required by Rule 9(b) and fails to state a claim for which relief may be granted.

Plaintiff's Third Cause of Action for breach of contract should also be dismissed pursuant to Rule 12(b)(6) because it fails to state a claim upon which relief may be granted.

Plaintiff's Fourth Cause of Action for breach of the implied covenant of good faith and fair dealing should also be dismissed pursuant to Rule 12(b)(6) because it fails to state a claim upon which relief may be granted.

Dated: September 2, 2014                    Respectfully submitted,

                                            SQUIRE PATTON BOGGS (US) LLP


                                            By:_____/s/ Joseph A. Meckes_____
                                                      Joseph A. Meckes

                                            Attorneys for Defendants Apperience
                                            Corporation and BlueSprig, Inc.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

This case is one of several brought by Plaintiff's counsel asserting that various types of computer utility software somehow fraudulently induce consumers to part with their money or somehow breach imaginary terms of the consumers' license agreement.[1]   Here, Plaintiff alleges that a software called Advanced SystemCare ("ASC") dupes consumers into purchasing a full version of the product through "scare tactics."   The problem, however, is that Plaintiff does not allege any specifics about the alleged "scare tactics" that he claims were used with him, but instead relies on advertisements allegedly used with other consumers over the years with respect to various versions of the ASC software.   Those allegations are nothing more than hyperbole, however.   Even a cursory comparison of Plaintiff's allegations with the illustrations that provide the foundation for Plaintiff's claims shows that Plaintiff's claims are little more than smoke and mirrors.

Each of Plaintiff's claims fails as a matter of law.   Initially, Plaintiff's claim for violation of the California Unfair Competition Law ("UCL") (Bus.& Prof. Code § 17200 *et seq*.) must be dismissed because the UCL's limited territorial reach does not cover the harm Plaintiff apparently suffered in Illinois.   While Plaintiff recently amended his Complaint in an effort to overcome this deficiency, the revisions in the First Amended Complaint ("FAC") only serve to illustrate Plaintiff's inability to connect the alleged misconduct with the State of California.

Next, Plaintiff fails to plead his UCL claim and his claim for fraudulent inducement with the particularity required by Federal Rule of Civil Procedure 9(b).   Plaintiff fails to plead what false representations were made to him, why those allegations were supposedly false, or how Plaintiff suffered any injury as a result of the alleged fraud.   Further, the FAC is internally inconsistent such that he can make no plausible claim to have been the victim of any fraudulent

---

[1] *See e.g., Gross v. Symantec Corp.,* 2012 U.S. Dist. LEXIS 107356, *28 (N.D. Cal. July 31, 2012); *Bilodeau v. McAfee, Inc*., 2013 U.S. Dist. LEXIS 89226, *24 n.1 (N.D. Cal. June 24, 2013).

-1-

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

conduct. Indeed, the few instances where the FAC ventures into specifics demonstrate only that the ASC software performed as promised.

The last two claims, claims for breach of contract and the covenant of good faith and fair dealings, must be dismissed because Plaintiff relies entirely on imaginary implied contract terms that are, at a minimum, contradicted by the express terms Plaintiff himself alleges in in the FAC.

## II.   BACKGROUND

The FAC[2] alleges that Defendants "develop[ ] and sell[ ] software that [they] claim[ ] will improve the speed, performance and stability of a consumer's personal computer ('PC'), protect against privacy risks, remove harmful errors, and improve Internet performance." Dkt 43 at ¶ 1. Throughout the FAC, Plaintiff refers to defendants Apperience Corporation and BlueSprig, Inc. collectively as "IObit" and treats them as a single entity based on nothing more than bald allegations that "they are simply branded divisions operated entirely by Defendant Apperience." *Id*. at ¶ 16-17. Other than suggesting common ownership, Plaintiff provides no facts to back up this assertion. *Id*.

The FAC alleges that Defendants (*i.e.*, "IObit") sell the ASC product line through the www.iobit.com website.[3] *Id*. at ¶ 1, 15-17. According to the FAC, the IObit website states that the ASC product line is "award-winning," has been downloaded more than 150 million times in more than 220 countries, and is among the most successful optimization and protection software products in the world. *Id*. at ¶ 18-19. The FAC quotes extensively from advertisements about ASC's features, including that it has "anti-spyware, privacy protection, performance tune-ups,

---

[2] For the Court's convenience, a redline comparing the FAC to the original Complaint is attached as Exhibit A.

[3] The Complaint relies heavily on information from www.iobit.com and quotations from that website comprise many of its key factual assertions. *See, e.g.,* Dkt 43 at ¶ 18-21, 37-39. Because the website forms the basis for Plaintiff's claims, and is incorporated into the Complaint, this Court may consider the rest of the website for context. *Knievel v. ESPN*, 393 F.3d 1068, 1076-77 (9th Cir. 2005) (affirming the use of entire website in evaluating motion to dismiss a claim for slander premised on a single photograph and caption on that website). For purposes of this Motion, however, Defendants rely solely on those portions of the IObit website that are quoted from the FAC.

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

and system cleaning capabilities." *Id.* at ¶ 20.  Other advertised features for ASC allegedly include "[r]egistry clean, defrag, system tune-up, shortcut fix, privacy sweep, junk files clean, disk fix and optimization." *Id.* at ¶ 21.

The FAC alleges that the ASC product line is divided into two segments, a free product and a paid "PRO" product, with different capabilities.  Dkt 43 at ¶ 1, 3-4, 20-21, 24, 26.  These two segments are periodically released as new versions, the most recent being version 7.  *Id.* at ¶ 18-19.  As explained in the FAC, the free version purports to provide basic optimization and protection, but access to the PRO segment "requires purchase of the full, registered version of Advanced SystemCare." *Id.* at ¶ 3-4.

According to the FAC, the ASC software purports to provide customers with a "Quick Care" feature "for daily maintenance," a "Toolbox" feature with "[o]ver 20 smart and dedicated system tools," and a "Turbo Boost" feature to speed up the computer.  *Id.* at ¶ 24, Fig. 4.  In addition, ASC is said to have a "Deep Care" feature that can "[e]rase your activity history and surfing traces," "[c]lean up junk files and recover disk space," provide passive defenses to "[p]revent spyware, malware from being installed in your PC," scan for "hard disk errors," scan for "Windows vulnerabilities," and defragment the user's hard drive.  *Id.* at ¶ 25, Fig. 5.  The FAC alleges that some of these features are only fully available on the paid PRO version, which is advertised to include, among other things, "Free 24/7 technical support." *Id.* at ¶ 26, Fig. 6.  Various advertisements reproduced in the FAC guarantee a full refund if the software does not improve performance: "You're fully protected by our 100% money back guarantee.  You WILL see a significant improvement in your PC's performance within 30 days, or we'll send you a full refund.  No questions asked." *Id.* at ¶ 23, Fig. 7.  The FAC nowhere suggests that Defendants do not honor the terms of this guarantee.

The FAC contains additional details about a couple of the features mentioned above.  It contains a screen shot from the "Details" information panel for the Deep Registry Fix tool.  Dkt 43 at ¶ 30, Fig. 8.  The FAC explains that the Windows registry is "a database of configuration settings that help facilitate the operation of computer applications in the operating system." *Id.* at

¶ 22 n.29.  According to the FAC, ASC's registry cleaning tool identifies certain files as a high priority to delete, explaining that they "are invalid or unneeded, which can be repaired automatically by this module" but warns not to "excessively clean your registry."  *Id.* at ¶ 30, Fig. 8.  Similarly, the FAC illustrates ASC's Privacy Sweep tool identifying certain files, including internet history files, as containing "your activity history and traces in the computer" and offers to "sweep them easily for you."  *Id.* at ¶ 32, Fig. 9.

The FAC provides few details about Plaintiff's own personal experience with the ASC software.  Plaintiff Jack Davis is an Illinois resident who claims to have experienced certain unidentified "problems" with his computer, which caused him in April 2011 to search the internet for utility software.  Dkt 43 at ¶ 7, 39, 43.  The FAC does not describe Plaintiff's problems or how they affected his computer.  Plaintiff then claims to have viewed advertisements on IObit.com that were "substantially similar" to the advertisements reproduced in the FAC.  *Id.* at ¶ 37-38.  Plaintiff claims to have then purchased an unspecified version of ASC for $23.40.  *Id.* at ¶ 39.  The FAC does not describe any specific performance claims that Plaintiff relied on when he made his purchase.

Plaintiff alleges that ASC diagnosed his computer as "afflicted with thousands of problems," and that the "software design" somehow "deceived" Plaintiff into believing that ASC was "making meaningful repairs to his computer."  *Id.* at ¶ 40-41.  The FAC provides no detail about the specific problems identified by ASC, how they were communicated to Plaintiff or why Plaintiff believes they were, in fact, inaccurate.  Nor are there any allegations about what repairs ASC purported to make or whether it actually performed those repairs.  The FAC merely alleges that "no credible assessment" of Plaintiff's PC and that it "continued to suffer from the same problems he experienced prior to purchasing."  *Id.* at ¶ 40, 43.  Despite the alleged lack of any benefit to his computer, the FAC alleges that Plaintiff relied on ASC's reports of the "meaningful repairs" to make a decision "to continue using the program rather than seek a refund."  *Id.* at ¶ 41.

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

-4-

## III. ARGUMENT

### A. The UCL Claims Should Be Dismissed Because Plaintiff Has Not Alleged A Sufficient Connection Between This Dispute And California.

This Court should dismiss Plaintiff's UCL claims because the FAC does not allege any "significant contact" between California and the actions that give rise to his claim. *Norwest Mortgage, Inc. v. Superior Court*, 72 Cal. App. 4th 214, 226 (1999). The California UCL was not "designed or intended to regulate claims of non-residents arising from conduct occurring entirely outside of California." *Tidenberg v. Bidz.com, Inc.*, 2009 U.S. Dist. LEXIS 21916, *10 (C.D. Cal. Mar. 4, 2009). The "critical issues," therefore, are "whether the injury occurred in California and whether the conduct of Defendants occurred in California." *Id.* at 11. If Plaintiff can answer neither of these questions in the affirmative, then he cannot claim relief under the UCL. *Id.*

In *Tidenberg*, the Court dismissed allegations similar to those in this case holding that "Plaintiff does not allege any specific facts linking Defendants' contacts with California to the claims Plaintiff asserts against them . . . noticeably absent from the SAC are allegations concerning [plaintiffs'] own individual contacts with California." 2009 U.S. Dist. LEXIS 21916 at *12-13. Similarly, in *In re Toyota Motor Corp*., the court dismissed UCL claims because "Plaintiffs have not alleged with sufficient detail that the point of dissemination from which advertising and promotional literature that they saw or could have seen is California." 785 F. Supp. 2d 883, 917-18 (C.D. Cal. 2011).

It is well established that "California statutes cannot provide relief for non-California residents who cannot allege a sufficient connection to California." *Id. See also U.S. Bank, N.A. v. PHL Variable Ins. Co.*, 2012 U.S. Dist. LEXIS 64029, *17 (C.D. Cal. April 26, 2012) ("The Court is unwilling to extend application of section 17200 where neither the conduct causing injury nor the injury itself occurred in California."). Here, Plaintiff is unable to plausibly claim that either the alleged injury or the alleged misconduct occurred in California.

Initially, while the FAC does not allege where the purported injury took place, nothing suggests that Plaintiff suffered any harm in California. The FAC instead alleges that Plaintiff is

-5-

DEFENDANTS APPERIENCE CORPORATION AND BLUESPRIG, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS THE AMENDED COMPLAINT -- CASE NO. 3:14-CV-766-WHA

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

"a citizen of the State of Illinois." Dkt 43 at ¶ 7.  The harm Plaintiff claims to have suffered likely took place when he allegedly purchased and used the ACS software—presumably on a computer in his home state of Illinois.[4]  *Id*. at ¶ 37-44.

Nor does the FAC allege any conduct by the Defendants in California that caused Plaintiff to suffer harm.  Instead, Plaintiff tries to draw a connection to California by claiming that "the headquarters and principal place of business" of both defendants is at the same residential California address, that employees may have been located in California, and that Plaintiff's payment for the software was processed by a California vendor.[5]

Plaintiff, however, points to no facts suggesting that the misconduct alleged in the FAC took place in California – as opposed to some other place.  Although Plaintiff has tried to connect the dots, all he succeeds in doing is drawing a blank.  Each new allegation only serves to illustrate starkly the lack of any meaningful link between California and Plaintiff's UCL claims:

- Plaintiff cites a circular prepared for potential investors by Apperience's alleged "parent company" that suggests that BlueSprig, Inc. is a subsidiary of Apperience Corporation and is "located" in California.  Dkt 43 at ¶ 12 n.3, 15-16.  Plaintiff, however, does not allege that the circular says that Apperience Corporation and BlueSprig, Inc. are the same company, that they sell the same products, or that any employee from either company works on or promotes ASC from California.  *Id*.  To the contrary, the circular quoted in the FAC explicitly states that the operations of Apperience Corporation are not located in California.[6]  And, in any event, the circular says nothing about the misconduct alleged here.

---

[4] That the harm did not take place in California is evident from the fact that Plaintiff did not allege in the FAC that he suffered harm in California.  Although Plaintiff included numerous additional allegations in an effort to create a California connection, this was not one of them.

[5] Although irrelevant for purposes of a Motion to Dismiss, both Defendants deny that their headquarters or principal place of business is in California.  Notably, the FAC changed the alleged address of the Defendants' "headquarters" from an office building in San Francisco, as alleged in the original complaint, to a residential house in Mountain View, California.  Compare Dkt 1 at ¶ 8-9 with Dkt 43 at ¶ 8-9.  That raises questions about whether Plaintiff has any plausible basis for making such allegations to begin with.

[6] Because the Complaint relies on the circular to locate the operations of Defendants, and there is no dispute about the authenticity of the document, this Court can take judicial notice of the

-6-

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

- The FAC alleges allegation that Defendants hold trademarks that are registered "to the same corporate address in San Francisco, California" (*id*. at ¶ 16(b)). The fact that Defendants may have a mail drop in San Francisco says nothing about where the allegedly illegal conduct occurred.

- Plaintiff cites to a number of profiles from the LinkedIn social media website, www.linkedin.com, which allegedly show that a few people claim to have been an employee or consultant for both BlueSprig, Inc. and IObit Limited. *Id*. at ¶ 12, 16(c), 16(d). Plaintiff apparently simply assumes (without any factual backup) that each of these individuals worked on the advertising and software that is at issue here. Even if each of these people were working in California, these allegations would still not connect any of them to the alleged fraudulent marketing that is the subject of Plaintiff's UCL claim. An allegation that someone might work for both BlueSprig, Inc. and IObit Limited does not somehow connect the Plaintiff's claims about ASC to California.

- Plaintiff cites to the IObit website, www.iobit.com, and the website of BlueSprig, Inc., www.bluesprig.com, to allege that a director of Apperience Corporation also serves as the CEO of BlueSprig, Inc. *Id*. at ¶ 16(d). Again, this begs the question: So what? The purpose of these citations is apparently to connect Apperience to BlueSprig and then BlueSprig to California because the FAC also alleges that this director is "located in California (according to the California Secretary of State)." *Id*. at 12. Whatever that is supposed to mean, this daisy-chain is wholly insufficient to show that any "injury occurred in California" or that "the conduct of Defendants occurred in California." *Tidenberg*, 2009 U.S. Dist. LEXIS 21916 at *11.

- Finally, Plaintiff adds an allegation that Defendants' "third-party payment processor" Avangate has a location in California. Dkt 43 at ¶ 12. Whether Apperience used a

---

circular. *Lee v. City of Los Angeles,* 250 F.3d 668, 688-89 (9th Cir. 2001). The circular states that the "principal place of business" of Apperience Corporation is in "Chengdu, the People's Republic of China." M Dream Inworld Limited, *Very Substantial Acquisition; Continuing Connected Transactions; Proposed Increase in Authorised Share Capital; and Notice of Extraordinary General Meeting* (Feb. 23, 2013), *at* http://www.mdreaminworld.com.hk/ publicsite/website/en/announcement/GLN20130222027.pdf.

-7-

California vendor to process credit-card payments is completely irrelevant to the UCL claim.

Once again, the new allegations only highlight the lack of any meaningful connection—despite

substantial investigation by Plaintiff—between California and the Plaintiff, Apperience

Corporation, the ASC product line, the alleged injury, and the alleged misconduct.

Authorities from this District establish that precisely these kinds of allegations are

insufficient to support a claim under California's UCL.  Dealing with an almost identical lawsuit,

Judge Breyer recently dismissed UCL claims (brought by the same attorneys representing

Plaintiff here) where the defendant admittedly was headquartered in California and the

connections between the claims and California were far more significant than alleged here.  *Gross*

*v. Symantec Corp.,* 2012 U.S. Dist. LEXIS 107356, *28 (N.D. Cal. July 31, 2012).  Not only was

the defendant in *Gross* headquartered in Mountain View, California, one could infer from the

FAC that activities related to the plaintiffs' allegations did, in fact, occur in California, such as

credit card statements listing charges for the software as originating from California and a

California address for questions related to Symantec's products and its End User License

Agreement.  *Id*. at *28-29 n.11.  Nonetheless, Judge Breyer ruled that because plaintiff had not

"allege[d] specific conduct that occurred in California" that gave rise to plaintiffs claims, the

plaintiff could not assert a claim arising under the California UCL.

Consistent with *Gross* and California law, it does not matter whether a defendant has one

or one hundred employees in California or whether a defendant produces and markets a dozen

other products in California or whether it processes credit card orders in California.  What matters

is whether the conduct that allegedly harmed the plaintiff occurred in California and whether the

injury to the plaintiff happened in California.  In the end, the "changes to [Plaintiff's] pleading do

not save its UCL claim" because Plaintiff cannot dispute the fact that the alleged

misrepresentations and the alleged injury both occurred "outside of California."  *Ice Cream*

*Distribs. of Evansville v. Dreyer's Grand Ice Cream*, 2010 U.S. Dist. LEXIS 99930, *22-23 (N.D.

Cal. Sept. 10, 2010).  No amount of additional "connections" to California will change those facts

about Plaintiff's claim.

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

-8-

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

As was the case in *Tidenberg*, *Toyota*, and *Gross*, dismissal is required here because Plaintiff has not alleged any plausible basis for applying California's UCL to his claims. Plaintiff has alleged (with virtually no foundation) only that the Defendants and a handful of their employees or former employees are or were based in California. Dkt 43 at ¶ 12, 16. From there the FAC jumps to the conclusion that the alleged misconduct somehow "occurred in, was directed to, and/or emanated from California"—without any allegations of where ASC was developed, where ASC is sold from, or Plaintiff's connection to California. *Id*. at ¶ 11, 13, 64. The facts alleged by the FAC are simply insufficient to "raise a right to relief [under California law] above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The FAC does not provide the facts necessary to allow the Court to find that it plausibly alleged that the conduct or injury occurred in California. The pleading is therefore insufficient under *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and must be dismissed.

### B.     Both The UCL and Fraudulent Inducement Claims Fail to Plead Fraudulent Conduct With Particularity.

In addition to Plaintiff's failure to allege any meaningful connection between its claims and California, the FAC also fails to satisfy the requirement in Federal Rule of Civil Procedure 9(b) that allegations of fraud be made with particularity.[7]  Dkt 43 at ¶ 53-77. Fraud or mistake claims are subject to the heightened pleading requirements of Rule 9(b), which requires that a plaintiff alleging fraud must "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *see also Vess v. Ciba-Geigy Corp. USA,* 317 F.3d 1097, 1106 (9th Cir. 2003)*; Kearns v. Ford Motor Co.,* 567 F.3d 1120, 1124 (9th Cir. 2009). To satisfy Rule 9(b), the allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just

---

[7] Plaintiff's claim under the "unfair conduct" prong of the UCL sounds in fraud because it is based on allegations of misrepresentations and other fraudulent conduct. Dkt 43 at ¶ 55-56. The particularity requirements of Rule 9(b) therefore apply. *See Ramirez v. Wells Fargo Bank*, N.A., 2011 U.S. Dist. LEXIS 45700, *7 (N.D. Cal. Apr. 27, 2011); *Kearns v. Ford Motor Co*., 567 F.3d 1120, 1125 (9th Cir. 2009) ("[W]e have specifically ruled that Rule 9(b)'s heightened pleading standards apply to claims for violations of the . . . UCL.").

deny that they have done anything wrong." *Semegen v. Weidner,* 780 F.2d 727, 731 (9th Cir. 1985). Thus, fraud claims must allege "an account of the 'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (per curiam). "The plaintiff must set forth what is false or misleading about a statement, and why it is false." *Bilodeau*, 2013 U.S. Dist. LEXIS 89226 at *10. The FAC here does not pass muster.

> 1.     The FAC Fails to Allege Facts Showing That Plaintiff Was Defrauded.

As a starting point, FAC fails to allege any specifics about how the Plaintiff himself was allegedly defrauded. In paragraphs 19 through 26, the FAC runs through a number of advertisements and representations allegedly encountered by a hypothetical "consumer" when he or she buys and runs the ASC software product. According to the FAC, Plaintiff saw advertisements several years ago that were "substantially similar" to those depicted in Figures 1-3 and 10-13 of the FAC. Based on those advertisements, Plaintiff somehow came "under the belief – created by IObit's representations – that the software would accurately assess the condition of his computer and would eliminate and repair problems that lead to poor computer performance." Dkt 43 at ¶ 39. The FAC, however, does not explain which of these representations caused him to so believe.

The FAC goes on to allege that Plaintiff was (1) "deceived into thinking that [ASC] was making meaningful repairs to his computer," *id.* at ¶ 41, and (2) "deceived by the software's representation that it was removing harmful problems and threats from his computer," *id.* The problem, however, is that the FAC does not identify any specific representations that caused him to be so deceived. Plaintiff does not describe any of the errors allegedly identified on Plaintiff's computer by ASC or what representations ASC supposedly made to him when it was being run on his computer that were deceptive. Nor does Plaintiff describe which features of ASC's "toolbox" he used or whether those features performed some or all of their promised functions on his computer. Plaintiff does not even state whether he used the "free 24/7 technical support" that ASC promises to paid users. Dkt 43 at ¶ 26, Fig 6.

-10-

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

Plaintiff contends that Defendants somehow acted fraudulently because ASC "could not actually perform the beneficial tasks described in its marketing materials and advertisements." The FAC does not specify, however, which "beneficial tasks" the ASC software is unable to perform.  To the contrary, the FAC specifically alleges that ASC "performs three primary optimization functions: it's a registry cleaner, it defragments a PC's hard drive, and it removes superfluous 'temporary' files."  Dkt 43 at ¶ 22.  If there are certain "beneficial tasks" that ASC has represented, but is unable, to perform, it is incumbent on Plaintiff not only to specifically identify the alleged misrepresentation, but to explain why those representations are false and how he was allegedly deceived by them.  *Bilodeau*, 2013 U.S. Dist. LEXIS 89226, *10 ("The plaintiff must set forth what is false or misleading about a statement, and why it is false.").  Plaintiff has failed to do so here.

The FAC also fails to identify the "problems" Plaintiff was experiencing that he supposedly purchased ASC to resolve.  Without such information, it is impossible to know whether Plaintiff suffered any damage – or whether he was deceived in the first place.  The FAC states simply that "his computer continued to suffer from the same problems he experienced prior to purchasing and running the software.  In other words, even after using [ASC] to optimize and repair his computer, the speed and performance of his computer failed to improve."  Dkt 43 at ¶ 43.  This, however, does not mean that the representations allegedly made to Plaintiff (whatever they might have been) were false.  If Plaintiff's computer was, by its nature, slow and underperforming, he could not have legitimately assumed that it would improve by using software he bought online for $23.40.[8]  Thus, it is impossible to discern from anything in the FAC

---

[8]   Claims that software will generally improve a computer's performance are considered puffery.  Under similar circumstances, in *Rasmussen v. Apple Inc.,* 2014 U.S. Dist. LEXIS 35352, *31-32 (N.D. Cal. Mar. 14, 2014), Judge Chen surveyed cases holding that statements like "ultra-reliable performance," "faster, more powerful," "faster access to data," "smoother and faster . . . dramatic speed and incredible overall performance" constituted puffery and were therefore non-actionable.  Likewise, the advertisements that ASC will "optimize," "boost," "fix," and "speed-up" a customer's computer in paragraphs 20 and 21 of the Complaint are generalized, non-actionable puffery.  Such non-specific assertions are "not intended to induce reliance and on which a reasonable consumer would not rely."  *Wolf v. Wells Fargo Bank, N.A.*, 2011 U.S. Dist. LEXIS

1   which specific representations were allegedly false (and, for that matter, how Plaintiff knows they

2   are false), whether Plaintiff was deceived, and whether he suffered any harm.

3       Considering almost identical allegations and claims, Judge Koh recently dismissed an

4   action brought by the same attorneys representing Plaintiff here on the ground that the FAC did

5   not plead fraud with particularity.  *Bilodeau*, 2013 U.S. Dist. LEXIS 89226 *32-33.  As in this

6   case, the plaintiff in *Bilodeau* cited numerous quotations from defendant McAfee's website that

7   the offending software would "[r]epair[] PC registry errors," "[i]mprove [PC] speed," "[s]can[]

8   for hidden threats," and "[p]revent[] frequent crashes," and "[s]afely repair harmful registry errors

9   that make your PC unstable." *Id.* at *21.  Judge Koh, however, concluded that none of these

10  purported marketing statements supported the plaintiff's claims that the defendants had

11  committed fraud by representing that the software would accurately report errors.  *Id.* at *26-27.

12      Judge Koh went on to rule that "Plaintiff's general, uncited allegations that Defendants

13  represented that RPC would 'accurately report harmful errors,' . . . 'accurately identify, report and

14  repair a variety of computer errors and other problems,' . . . are a far cry from the level of

15  concrete, technical specificity" required to plead fraud with particularity.  *Id.*  Quoting *Gross v.

16  Symantec Corp.* – yet another case brought by Plaintiff's counsel – the court reasoned that

17  "'Plaintiff's entire suit turns on how [defendants'] representations compare to the actual

18  functionality of [the] software,' and the lack of specificity regarding what representations each

19  Defendant actually made is therefore 'fatal to all Plaintiff's claims because the same allegations

20  of fraudulent conduct support each claim.'" *Id.*, quoting *Gross*, 2012 U.S. Dist. LEXIS 107356 at

21  *5.

22      As was the case in both *Bilodeau* and *Gross,* "neither Defendants nor the Court can

23  sufficiently evaluate Plaintiff's claims without clarity in the FAC as to what exactly was

24  represented by whom." *Bilodeau*, 2013 U.S. Dist. LEXIS 89226 at *23.  Accordingly, the Court

25  should grant Defendants' motion to dismiss under Rule 9(b).

26

27  117835, *15 (N.D. Cal. Oct. 12, 2011).  By contrast, the Complaint alleges that Defendants did
    invite customers to rely on their "money back guarantee."  Dkt 43 at ¶ 26, Fig. 7.

28

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

-12-

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

2.     Allegations Regarding Which Products Are At Issue Are Confused.

The FAC also fails to allege fraud with particularity because it is incoherent as to which ASC software product is the subject of Plaintiff's claims.  The FAC begins by claiming that this case is about the "deceptive design, marketing and sale" of ASC PRO, the paid version of ASC. Dkt 43 at ¶ 1.  But the FAC never identifies what version of ASC PRO Plaintiff purchased, so it is impossible to tell what "beneficial tasks" the software should be able to perform in the first place. *See id*. at ¶ 39.  This confusion is compounded by the fact that the advertisements alleged in the FAC cover a variety of products.  For example, Figure 1 of the FAC refers both to ASC PRO and the "Menu 8" product line, while Figure 2 also mentions the Diver Booster PRO product line.  *Id*. at ¶ 19.

Even the advertisements about ASC are for different versions.  Figure 2 refers to version 7 of ASC (*id*. at ¶ 19), Figure 4 refers to version 5 (*id*. at ¶ 24), but Figures 10 & 11 refer to version 4 (*id*. at ¶ 38).  Plaintiff has also mixed advertisements for the free and PRO segments of ASC as if they were the same product.  Indeed, the long recitation of advertisements in paragraph 20 refers to both versions 5 and 7 of ASC, and perhaps others, without regard to the version purchased by plaintiff.  *Id*. at ¶ 20 n.17-25.  The result is that the FAC does not distinguish which representations go with which products, and which representations are relevant to the version purchased by Plaintiff.  If Plaintiff desires to proceed on a class basis, he needs to clearly plead what version was purchased and what the promised capabilities were.  The claim on "information and belief" that each version of ASC has "substantially similar functionality," *id*. at ¶ 18 n.15, does nothing to cure the confusion about what advertisements or specific products are the subject of Plaintiff's fraud claims.

3.     The FAC Does Not Distinguish Between the Two Defendants.

The FAC also fails to allege fraud with particularity because it fails to distinguish between the two defendants, Apperience Corporation and BlueSprig, Inc.  As noted above, the FAC refers to both defendants as "IObit" without distinguishing between them and relies on generalized allegations (unsupported by anything other than alleged common ownership) to claim that they

-13-

are the same company.  The FAC does not allege which defendant operates the www.iobit.com website or which defendant allegedly developed and sold the ASC software purchased by Plaintiff or, if they are both somehow involved, their respective roles.  As this Court noted in *Rodriguez v. U.S. Bank, N.A.*, Rule 9(b) "does not allow a complaint to . . . lump multiple defendants together but require[s] plaintiffs to differentiate their allegations when suing more than one defendant."  2012 U.S. Dist. LEXIS 77228, *6 (N.D. Cal. June 4, 2012) (quoting *Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011)).  Plaintiff's claims must be dismissed for this simple reason as well.

### C.   The FAC Fails Plausibly To Allege a Claim for Fraudulent Inducement or a UCL Claim Based in Fraud.

Contradictions within the FAC itself that undermine the plausibility of the alleged fraud also require dismissal.  *Twombly*, 550 U.S. at 555.  The factual recitations about what Plaintiff believed about ASC are self-contradictory and therefore cannot support his fraud claim.  *See Zamanyan v. Northland Group, Inc*., 2012 U.S. Dist. LEXIS 96960, *2-5 (C.D. Cal. July 9, 2012) (dismissing FAC with inconsistent factual allegations).  Similarly, the specific factual allegations about ASC's performance and representations to consumers only show that ASC performs as allegedly advertised, contradicting the more general allegations alleging non-performance and misrepresentations.  Those allegations of fraud therefore "do not meet the plausibility standard and need not be accepted as true."  *Cox v. Reliance Std. Life Ins. Co*., 2014 U.S. Dist. LEXIS 29773, *6 (E.D. Cal. Mar. 3, 2014).

1.   Plaintiff's Own Allegations Show He Was Not the Victim of Fraud.

As noted in Figure 7 of the FAC (¶ 26), the ASC software was "guaranteed to make your PC run faster."  This "guarantee," however, simply assured purchasers that they would "see a significant improvement in your PC's performance within 90 days, or we'll send you a full refund.  No questions asked."  *Id.*  Thus, according to the FAC itself, Defendants implicitly recognized that ASC would not speed performance in all cases.  If it was unable to deliver, Defendants agreed they would return the purchase price to the consumer—at least according to an advertisement "substantially similar" to the one viewed by Plaintiff.

-14-

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

1    Here, however, Plaintiff alleges that he did not take advantage of this money-back

2    guarantee because Defendants somehow "deceived [him] into thinking that [ASC] was making

3    meaningful repairs to his computer." Dkt 43 at ¶ 41.  Thus, Plaintiff "elected to continue using

4    the program rather than seek a refund." *Id.*  Incongruously, however, Plaintiff goes on to allege

5    that "he repeatedly ran [ASC]'s system scan" but nonetheless "his computer continued to suffer

6    from the same problems he experienced prior to purchasing and running the software," i.e., "the

7    speed and performance of his computer failed to improve." *Id.* at ¶ 43.

8    In *Bilodeau*, the court expressed doubts as to the plausibility of the plaintiff's claim that

9    reports of errors on her computer induced her to purchase the software given that she had 30 days

10   to test the software before purchasing.  2013 U.S. Dist. LEXIS 89226 at *31 n.3.  Although the

11   court granted the defendants' motion to dismiss under Rule 9(b) (and thus did not directly address

12   the plausibility of the plaintiff's claims), the court cautioned the plaintiff that "[a]n amended

13   complaint that seeks to pursue a theory of liability based on the software's representations on

14   Plaintiff's computer must allege facts explaining why an anti-virus computer repair software that

15   continuously reported critical errors would induce Plaintiff to keep the program beyond the 30-

16   day trial period." *Id.* at *32, n.3.

17   Here, Plaintiff's allegations fail on their face since Plaintiff plainly contradicts himself by

18   alleging on one hand that he declined to seek a refund because he believed ASC was repairing his

19   computer, while alleging only a few paragraphs later that ASC never improved the speed or

20   performance of his machine.  Plaintiff's claims should be dismissed on this ground as a matter of

21   law.

22         2.    <u>Plaintiff's Characterizations of Certain Representations Are Contradicted
                  by the Representations Themselves.</u>

23   The FAC attempts to give specific examples to support its general assertions that ASC

24   defrauds customers, but each example contradicts its general allegations of fraud.  Specifically,

25   Plaintiff alleges that the ASC software's registry cleaning and privacy sweep applications mislead

26   customers into believing that there are "system errors" or "security threats," which, Plaintiff

27   alleges, is demonstrable because the ASC software allegedly found such "problems" on a new

28

-15-

computer.  Dkt 43 ¶ 25, Fig. 5.  As a threshold matter, the FAC makes no effort to connect those examples to Plaintiff here—there is no claim that Plaintiff used ASC on a new computer or that he ran the registry or privacy features.[9]  But even if he had, these examples illustrate ASC performing as advertised.

The FAC generally alleges that ASC fraudulently identifies empty registry files as "system errors" or "security threats."  Dkt 43 at ¶ 29-31.  But Figure 8 of the FAC belies that allegation. In fact, according to Figure 8, the ASC software tells users that the empty registry files are only "invalid or unneeded."  *Id*. at ¶ 30, Fig. 8.  It even warns users not to "excessively clean your registry."  *Id*.  There is no language suggesting that those files are "security threats" or "system errors."  Of course, a customer choosing to run the registry cleaner would expect that empty files would be marked for deletion.

Similarly, the FAC generally alleges that ASC fraudulently calls benign log files "system errors" or "security threats."  Dkt 43 at ¶ 32.  But Figure 9 shows that ASC is consistent with the FAC's explanation of log files as created "through the normal use of a web browser . . . while a person browses the World Wide Web."  *Id*.  Figure 9 illustrates ASC reporting five log files in a "Privacy Sweep" that could be deleted because they contain the customer's "activity history and traces in the computer."  *Id*. at Fig. 9.  Given that the FAC alleges that ASC promises a privacy sweep, it is hard to understand how Plaintiff could consider this kind of report "fraudulent."

As noted, the FAC asserts that something about ASC must be fraudulent because it found problems with a "brand-new computer."  Dkt 43 at ¶ 29 & ¶ 25, Figure 5.  But new computers, by definition, have standard settings, i.e., they will not be not optimized for the individual purchasers' use.  And anyone that has purchased a new computer knows they often come with pre-loaded software (sometimes called "bloatware" or "crapware"), and may not come with protection from spyware or malware.  If ASC is working as advertised, customers would expect it to find issues with a new computer.  And that is exactly what is illustrated in Figure 5 of the FAC, which allegedly shows ASC running on a new computer. Dkt 43 at ¶ 25, Fig. 5.  It shows the

---

[9] The Complaint alleges nothing about the allegedly "new computer" on which ASC was allegedly installed or by whom.

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

-16-

new computer has a small amount of junk files, is vulnerable to thousands of types of spyware and malware, needs an update patch for one Windows vulnerability, and has a modest number of defragmented files.  *Id.*  In any event, Plaintiff fails to explain how any of this is deceptive or explain how he was deceived by it.

These allegations do not show fraud, but rather suggest a software system performing as advertised.  Plaintiff's claim that these specific functions "don't come close to IObit's representations about the software's features," Dkt 43 at ¶ 22, is a red herring.  As alleged in the FAC, ASC offers *dozens* of different tools to customers.  Dkt 43 at ¶ 24, Fig. 4, ¶ 25, Fig. 5, & ¶ 26, Fig 6.  Alleging that ASC is fraudulent because its registry cleaner does not protect against malware is like alleging that a car is a lemon because its windshield does not protect against slippery roads.  While the FAC alleges conclusorily that ASC does not perform the "beneficial tasks" for which it is advertised, the FAC does not allege how any of ASC's numerous tools failed to perform.  The FAC must be dismissed because the FAC's conclusory allegations of fraud are contradicted by the specific allegations about how ASC works and what ASC tells to customers.

### D.     The Breach of Contract Claim Must Be Dismissed.

This Court should dismiss the breach of contract claim under Rule 12(b)(6).  At least three independent grounds support dismissal:

*First*, the FAC fails to plead the terms of the alleged contract with the required specificity. *Rubio v. U.S. Bank, N.A.*, 2014 U.S. Dist. LEXIS 45677, *29 (N.D. Cal. Mar. 31, 2014) (plaintiff must plead breach of contract with specificity) (citing *Levy v. State Farm Mut. Auto. Ins. Co.*, 150 Cal. App. 4th 1, 5 (2007)).  As alleged in the FAC, the only term in the contract is for Defendants "to honestly diagnose and report problems and threats . . . and then to remove or repair those problems." Dkt 43 at ¶ 78.  The FAC cites to no written or oral statement to support this vague language, which is nothing more than a statement of Plaintiff's subjective desire for perfect utility software.  The contractual term proposed by Plaintiff can be read as a promise to solve all of his computer problems (an impossibility) or as too indefinite to be unenforceable because there is no

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

-17-

explanation of what problems are covered by the contract.  Such a vague promise does not create an enforceable contract.  *See Haskins v. Symantec Corp.*, 2013 U.S. Dist. LEXIS 169865, *34 (N.D. Cal. Dec. 1, 2013) ("The SAC does not clearly allege the substance of the relevant terms of Plaintiff's alleged contract with Symantec, such that Defendant is reasonably on notice of the claims against it.").  In any case, there can be no breach of contract absent allegations about the breach, including an identification of the specific computer problem that Defendants agreed to repair.

*Second*, the FAC fails to allege that Plaintiff gave notice of the alleged breach within a reasonable time.  California law states that a party seeking to claim breach of contract "must plead that notice of the alleged breach was provided to the seller within a reasonable time after discovery of the breach.'"  *Rubio v. Chevron Corp.*, 656 F.3d 925, 932 (9th Cir. 2011) (citation omitted).  The FAC does not plead notice of any kind.  Indeed, because Defendants' advertisements reproduced in the FAC purport to provide all customers with a money-back guarantee, this term provides a remedy for the alleged breach that Plaintiff admits he did not even try to take advantage of.  Dkt 43, ¶ 41 & ¶ 26, Fig. 7.  The breach of contract claim must therefore be dismissed for lack of notice.  *See In re iPhone 4S Consumer Litig.*, 2014 U.S. Dist. LEXIS 19363,*27-28 (N.D. Cal. Feb. 14, 2014) (explaining that "[t]he notice requirement 'is designed to allow the seller the opportunity to repair the defective item, reduce damages, avoid defective products in the future, and negotiate settlements.'") (citation omitted).

*Third*, the FAC attempts to create an implied contract with imaginary terms where the parties have an actual contract.  "[A]n action based on an implied-in-fact or quasi-contract cannot lie where there exists between the parties a valid express contract covering the same subject matter."  *O'Connor v. Uber Techs., Inc.*, 2013 U.S. Dist. LEXIS 171813, *35 (N.D. Cal. Dec. 5, 2013) (citation omitted).  In *O'Connor*, Judge Chen dismissed a claim for breach of implied-in-fact contract because there was an actual contract between the parties.  *Id*.; *see also Raisin Bargaining Ass'n v. Hartford Cas. Ins. Co.*, 2010 U.S. Dist. LEXIS 101415, *8 (E.D. Cal. Sept. 7, 2010).  This Court should apply the same result in this case.  The guarantee that ASC makes to

-18-

consumers is clearly stated in the FAC:  "You WILL see a significant improvement in your PC's performance within 30 days, or we'll send you a full refund.  No questions asked."  Dkt 43 at ¶ 26, Fig. 7.  There was no promise that Plaintiff's computer would improve, only an agreement that if he did not see a significant improvement, he could ask for a full refund.  Because Plaintiff's claim of an absolute promise contradicts the actual contract on this issue, the claim must be dismissed.

### E.   The Claim for the Breach of the Covenant of Good Faith and Fair Dealing Must Be Dismissed.

Plaintiff's claim for a breach of the covenant of good faith and fair dealing may be dismissed on the same basis as the breach of contract claim.  Such a claim relies on allegations regarding the "specific contractual provisions in the relevant agreement" that "were frustrated by defendant's conduct."  *Lothlen v. Wells Fargo Bank, N.A.*, 2014 U.S. Dist. LEXIS 42310, *9 (N.D. Cal. Mar. 27, 2014).  Because the FAC does not allege an enforceable implied contract, or any specific enforceable terms of such a contract, dismissal is appropriate.  The FAC also fails to allege the additional bad faith conduct required for a claim for breach of the covenant of good faith and fair dealing.  *See Synopsys, Inc. v. Atoptech, Inc*., 2013 U.S. Dist. LEXIS 153089, *44-45 (N.D. Cal. Oct. 24, 2013)  ("If the allegations in a breach of implied covenant claim do not go beyond the statement of a mere contract breach and, relying on the same alleged acts . . . they may be disregarded as superfluous as no additional claim is actually stated.") (citation omitted).  Therefore, this Court should dismiss Plaintiff's claim for breach of the covenant of good faith and fair dealing for this reason as well.

## IV.   CONCLUSION

Despite an attempt to plead around Defendants' original Motion to Dismiss, Plaintiff's efforts to plead claims for relief against Defendants fail because they are both substantively and procedurally defective.  Plaintiff has no right to export California law to Illinois on nothing more than vague recitations of "emanations" from the State and a hodgepodge of contacts between Defendants and California.  Further, if Plaintiff is going to try to plead fraud, he must do so with the level of particularity required by the Federal Rules of Civil Procedure.  Similarly, if Plaintiff

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

-19-

wishes to plead fraud, he cannot at the same time plead facts that show he was not defrauded, and which are fatal to his claims.  Finally, Plaintiff cannot plead breach of contract (or implied covenant of good faith and fair dealing) without plausibly explaining what terms were breached and how.  For these various reasons, the Court should dismiss Plaintiff's claims with prejudice.

Dated: September 2, 2014

Respectfully submitted,

SQUIRE PATTON BOGGS (US) LLP


By: _____/s/ Joseph A. Meckes_____
                    Joseph A. Meckes

Attorneys for Defendants Apperience
Corporation and BlueSprig, Inc.

SQUIRE PATTON BOGGS (US) LLP
275 Battery Street, Suite 2600
San Francisco, California 94111

DEFENDANTS APPERIENCE CORPORATION AND BLUESPRIG, INC.'S NOTICE OF MOTION AND MOTION TO
DISMISS THE AMENDED COMPLAINT -- CASE NO. 3:14-CV-766-WHA