1
2
3
4
5
6                       IN THE UNITED STATES DISTRICT COURT

7
8                    FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

10   JACK DAVIS, individually and on behalf
11   of all others similarly situated,                  No. C 14-00766 WHA

12          Plaintiff,

13      v.                                               **ORDER GRANTING SECOND
                                                         MOTION TO DISMISS AND
14   APPERIENCE CORPORATION and                          DENYING REQUEST FOR
     BLUESPRIG, INC.,                                    JUDICIAL NOTICE AS MOOT**
15
            Defendants.
16   ————————————————————————/

17                                  **INTRODUCTION**

18          In this putative class action alleging faulty computer software, defendants have filed a

19   second motion to dismiss and request judicial notice in support thereof. To the extent stated, and

20   subject to the last paragraph of this order, the motion is **GRANTED**. The request for judicial

21   notice is **DENIED AS MOOT**.

22                                   **STATEMENT**

23          The following well-pled facts are assumed to be true for purposes of the present motion.

24   Defendants, under their brand name "IObit" and "through [their] deceptive design, marketing,

25   and sale," allegedly caused Davis and putative class members to purchase and use faulty

26   software called Advanced SystemCare PRO. Once downloaded onto a consumer's computer, the

27   software was supposed to "protect against privacy risks, remove harmful errors, [] improve

28   Internet performance," as well as "increase a [computer's] speed and performance, clean out

     clutter, and optimize Internet speeds" (Amd. Compl. ¶¶ 1, 2, 18–19).

*United States District Court*
For the Northern District of California

**United States District Court**

For the Northern District of California

1      Consumers reportedly obtained the Advanced SystemCare software in two steps.  *First*,

2  they downloaded a free, limited trial version of the software, allowing them to run initial

3  diagnostic scans and detect reported system errors and security threats on their computers.

4  *Second*, consumers then paid for the full, registered version of the software so that they could

5  eliminate all of the detected errors and threats.  Neither the free version nor the paid version of

6  the software, however, "perform[ed] any credible assessment of the computer's condition," and

7  the software was instead "designed to invariably and ominously report that the consumer's

8  [computer] needs repair and is at-risk due to the existence of harmful errors, privacy threats, and

9  other computer problems, regardless of the computer's actual status" (*id.* ¶¶ 3–6, 28).

10      As a result, plaintiff Jack Davis began this putative class action, later filing an amended

11  complaint on August 15, 2014 (Dkt. No. 43).  Among other things, the amended complaint

12  asserts four claims on behalf of Davis and the putative class:  (1) violations of California's

13  Unfair Competition Law; (2) fraudulent inducement; (3) breach of contract; and (4) breach of the

14  implied covenant of good faith and fair dealing.  After the amended complaint mooted an earlier

15  motion to dismiss, defendants Apperience Corporation and BlueSprig, Inc. have now filed a

16  second motion to dismiss under Federal Rules of Civil Procedure 9(b) and 12(b)(6).  This order

17  follows full briefing, two sets of supplemental briefing, and oral argument from both sides.

18                                **ANALYSIS**

19      In support of their present motion, defendants request judicial notice of two exhibits

20  concerning a printout from the California Secretary of State's website and a company circular.

21  Because this order need not reach those exhibits to decide the present motion, the request for

22  judicial notice is **DENIED AS MOOT**.

23      **1.      CLAIMS ONE AND TWO .**

24      Both sides agree that Claims One and Two of the amended complaint — concerning

25  alleged violations of California's Unfair Competition Law and fraudulent inducement — are

26  subject to the heightened pleading standard under Rule 9(b) (*see, e.g.*, Amd. Compl. ¶ 61).

27  Regarding that rule, our court of appeals has instructed (emphasis added):

28

United States District Court

For the Northern District of California

> Rule 9(b) demands that, when averments of fraud are made, the circumstances constituting the alleged fraud "be 'specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong . . . .'" Averments of fraud must be accompanied by "the who, what, when, where, and how" of the misconduct charged . . . . "[A] plaintiff must set forth *more* than the neutral facts necessary to identify the transaction. *The plaintiff must set forth what is false or misleading about a statement, and why it is false . . . .*"

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (emphasis added) (internal citations omitted). Defendants now argue that the amended complaint fails to meet Rule 9(b)'s standard, at least as to what Davis experienced with the accused software.

   With respect to Davis, the amended complaint asserts that on or about April 28, 2011, he performed an Internet search and came across a posting for the accused software. That posting "was substantially similar" to the following (emphasis in original):

> IObit:  Speed Up Slow Computer, Keep PC and Internet Secure . . .
> www.iobit.com/
>
> Builds high-performing software products to free speed up computer, fix & clean registry and malware, optmize [sic] PC games, tune up Windows 7, Vista, XP, etc.  Advanced SystemCare - Products = Menu 8 - Advanced SystemCare 7 PRO.

   After clicking on the posting, Davis was redirected to defendants' website (www.iobit.com), where he read additional advertisements about the accused software. According to the amended complaint, those advertisements were "substantially similar" to the ones listed below (emphasis added):

> Speed Up your computer in just one click!

> Deeply Cleans and Repairs registry[.]

> Fixes Various System Errors[.]

> Double or triple the speed of your old and slow PC[.]

> Advanced SystemCare PRO provides an always-on, automated, all-in-one PC Healthcare Service with anti-spyware, privacy protection, performance tune-ups, and system cleaning capabilities.  This powerful and award-winning precision tool *fixes stubborn errors, cleans out clutter, optimizes Internet and download speeds, ensures personal security, and maintains maximum computer performance automatically*.

3

United States District Court

For the Northern District of California

1        Davis then relied on the above representations — "namely, that Advanced System would

2  'fix[] stubborn errors, clean[] out clutter, optimize[] Internet and download speeds, ensure[]

3  personal security, and maintain[] computer performance automatically'" — to buy the software

4  (there is no allegation that he first tried the free, limited trial version).

5        Later, Davis used the software and continued doing so because the software had indicated

6  "thousands of problems" with his computer and because "the software's design" deceived him

7  into thinking that meaningful repairs were being made to his computer, when reportedly, "no

8  credible assessment of [his] computer occurred" and the software "could not actually perform the

9  beneficial tasks described in its marketing materials and advertisements." Specifically, the

10  amended complaint alleges that "even after using [the software] to optimize and repair [Davis']

11  computer, *the speed and performance of his computer failed to improve*" (Amd. Compl. ¶¶

12  18–21, 37–44) (emphasis added).

13        This order agrees with the defense. It is unclear "what is false or misleading" about the

14  above representations and "why [they are] false." *Vess*, 317 F.3d at 1106. For example, Davis'

15  computer reportedly "continued to suffer from the same problems he experienced prior to

16  purchasing and running the software," such that "the speed and performance of [Davis']

17  computer failed to improve" thereafter. In that connection, the amended complaint contends that

18  Davis relied "namely" on the representation that the software would "*optimize*[] Internet and

19  download speeds" and "*maintain*[] maximum computer performance," among other things. But

20  the amended complaint then fails to identify what the continued specific problems were with

21  Davis' computer. Put differently, it is unclear as to what is specifically false about the

22  representations regarding the optimization and maintenance computer speed and performance

23  (and why they are false), because the amended complaint is silent as to what speed or

24  performance issues initially existed on Davis' computer, how the speed and performance on

25  Davis' computer were suboptimal and unmaintained, and whether such issues were things that

26  the software was supposed to fix (Amd. Compl. ¶¶ 39, 41–43) (emphasis added).

27

28

4

1    Indeed, at oral argument, Davis' counsel admitted that the accused software does

2 function to clear up registry errors, but the problem may be that for a new computer, there would

3 be no appreciable increase in speed after the software does its work because the new computer is

4 already running at near its optimum speed.

5    Another example is the amended complaint's allegation that the software performed "no

6 credible assessment" of reported errors on Davis' computer. But this allegation is based on the

7 software's work on a *different, new computer*, not Davis' own computer (*see* Opp. 12; Amd.

8 Compl. ¶¶ 29, 40). A similar situation arose in *Bilodeau v. McAfee, Inc.,* where the plaintiff

9 there (also represented by Davis' counsel) had concluded that "because [the software there]

10 allegedly reported false positives on a new virtual computer, the reported errors on her computer

11 either did not exist or did not pose a risk." 12-CV-04589-LHK, 2013 WL 3200658, *10 (N.D.

12 Cal. June 24, 2013) (Judge Lucy H. Koh). *Bilodeau* held that under Rule 9(b), such a conclusion

13 did not provide sufficient particularity because the conclusion "fail[ed] to link it to [the

14 plaintiff's] personal experience." So too here.

15    A better way of alleging Claims One and Two would be to have a computer expert

16 analyze the actual code of the accused software purchased by Davis, so that the expert can

17 determine where its code falls short of the hype. If Davis still has both the software and his

18 computer, an even better approach would be to have the computer expert analyze the software on

19 Davis' computer itself to see how close the software comes to performing each advertised

20 function.

21    For pleading purposes, the expert analysis need not be exhaustive and would only need to

22 isolate and identify a material set of false claims in the advertising, perhaps even one material

23 false claim. An expert could easily examine the code and reveal, if true, that the code was

24 designed to falsely alert the user to various supposed issues, whether or not they really existed.

25    This order does not hold that an expert analysis of the source code is always required. In

26 some cases, the advertised function will be specific and positive but, when the product is run, the

27 function fails miserably and plainly. For example, the advertisement might say that feedback is

28 given in Spanish but the feedback is actually given only in English. No expert is needed in such

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1    a case.  Conceivably, this rule could apply in this case, but Davis' counsel have pled a mishmash

2    and lumped together many advertising claims and then announced that all of them did not work

3    as advertised.

4          For Claims One and Two, this order therefore finds that the amended complaint does not

5    provide sufficient particularity to satisfy Rule 9(b).  Subject to the last paragraph of this order,

6    the motion to dismiss those two claims is **GRANTED**.

7          **2.     CLAIM THREE.**

8          Defendants also argue that Claim Three — which asserts breach of contract — should be

9    dismissed under Rule 12(b)(6).  To state a claim for breach of contract, the amended complaint

10   must plead:  (1) the existence of a contract; (2) a breach of the contract by defendants; (3)

11   performance or excuse of non-performance by Davis; and (4) damages suffered by Davis as a

12   result of defendants' breach.  *McDonald v. John P. Scripps Newspaper*, 210 Cal. App. 3d 100,

13   104 (1989).  In addition, the amended complaint "must identify the specific provision of the

14   contract allegedly breached by [] defendant[s]."  *Bilodeau*, 2013 WL 3200658 at \*12.

15         To show the existence of an alleged contract and breach thereof, Davis points to the

16   amended complaint's allegations that (Amd. Compl. ¶¶ 79–82) (emphasis added):

17                Plaintiff and the Class members entered into agreements with
                  [defendants] whereby [defendants] agreed to sell, and Plaintiff
18                and the Class agreed to purchase, software that would detect and
                  remove legitimate computer problems and threats from
19                Plaintiff's and the Class's computers and
                  improve the computer's speed and performance.
20
                  Based on the foregoing representations, Plaintiff and the Class
21                paid, and [defendants] accepted, Advanced SystemCare's
                  purchase price, and therefore performed their obligations under
22                the contracts.

23                As such, [*defendants*] *voluntarily assumed a contractual
                  obligation to honestly diagnose and report problems and threats*
24                *on Plaintiff's and the Class members' computer systems and then
                  to remove or repair those problems.*  Although this obligation is
25                a material term of the agreement, [defendants] did not honor it.

26                [*Defendants*] *breached* [*their*] *contracts with Plaintiff and the
                  Class by failing to honestly and accurately inform them about*
27                *the true condition of their computers, and further by providing
                  software that failed to offer the benefits promised.*
28

6

1    From this, Davis argues that defendants breached their agreements "by failing to honestly and

2    accurately inform them of the true condition of their computers — inasmuch as the [s]oftware

3    was designed so that it could not do so — and otherwise failing to provide software that could

4    perform the functions promised" (Opp. 18).

5          This order holds that the above allegations are enough to claim breach of contract, but

6    there is still a problem:  the amended complaint does not allege that notice of the alleged breach

7    was provided to defendants before this lawsuit was filed.  Under Division 2 of the California

8    Commercial Code, which is applicable to the transaction of goods, "[t]he buyer must, within a

9    reasonable time after he or she discovers or should have discovered any breach, notify the seller

10   of breach or be barred from any remedy . . . ."  Cal. Com. Code 2102, 2607(3)(A).  Indeed, in

11   affirming the dismissal of a breach of contract claim as well as a claim for breach of warranty,

12   our court of appeals held the following in connection with Section 2607(3)(A):

13                  To avoid dismissal of a breach of contract *or* breach of warranty
                    claim in California, [a] buyer must plead that notice of the
14                  alleged breach was provided to the seller within a reasonable
                    time after discovery of the breach.
15
     *Alvarez v. Chevron Corp.*, 656 F.3d 925, 932 (9th Cir. 2011) (emphasis added) (internal citation
16
     omitted).
17
           In this action, no such notice has been pled in the amended complaint.  The Court
18
     therefore considered whether there are any recognized exceptions to Section 2607(3)(A) under
19
     California authorities (including our court of appeals' decisions construing Section 2607(3)(A)).
20
     The only exception that comes close to applying here is the exception for "actions by injured
21
     consumers against *manufacturers with whom they have not dealt.*"  *Greenman v. Yuba Power*
22
     *Products, Inc.*, 59 Cal. 2d 57, 61 (1963) (emphasis added).  As this case is currently pled, this
23
     exception does not apply (indeed, even Davis' counsel concede that the manufacturer exception
24
     likely does not apply) (Supp. Br. 2).  Without any other recognized exception to Section
25
     2607(3)(A) applicable here, the Court is obligated to dismiss Claim Three for failure to give
26
     notice as required by Section 2607(3)(A).
27

28

United States District Court
For the Northern District of California

1    Nonetheless, Davis contends in his first supplemental brief that Section 2607(3)(A)

2  "generally" applies to breaches of express warranties, not common law breaches of contract or

3  implied breaches of the covenant of good faith and fair dealing (First Supp. Br. 1).  For support,

4  he relies on two decisions:  *Cardinal Health 301, Inc. v. Tyco Electronics Corporation*, 169 Cal.

5  App. 4th 116, 135 (2008), and *Donohue v. Apple, Inc.*, 871 F. Supp. 2d 913, 929 (N.D. Cal.

6  2012) (Judge Ronald M. Whyte).

7    Neither decision expressly held that Section 2607(3)(A) applies *only* to breach of express

8  warranties, as Davis now suggests.  In fact, *Donohue* cites to *Alvarez* in discussing the notice

9  requirement and dismissing the plaintiff's "breach of express *and implied warranty claims* under

10  California law."  *Donahue*, 871 F. Supp. 2d at 929 (emphasis added).

11    Moreover, none of the other decisions cited by Davis held that Section 2607(3)(A) is

12  restricted to breach of warranty claims.  In *Worley v. Avanquest North America, Inc.*, for

13  example, Section 2607(3)(A) only appeared in connection with a defendant's motion to dismiss a

14  warranty claim because that motion had made no mention of Section 2607(3)(A) to dismiss the

15  breach of contract claim.  The district court then dismissed the warranty claim for failure to meet

16  the notice requirement.  C 12-04391 SI, 2013 WL 450388, *4 (N.D. Cal. Feb. 5, 2013) (Judge

17  Susan Illston).  Later in that case (on a second motion to dismiss), the defendant attempted to

18  argue Section 2607(3)(A) again — this time to dismiss the breach of contract claim.  *Worley*

19  held that this attempt "amount[ed] to a *sub rosa* motion to reconsider the prior ruling" and that

20  there was "no reason to allow [the] defendant to now present arguments it could have raised . . .

21  on its first motion to dismiss."  It was for those reasons that *Worley* did not consider Section

22  2607(3)(A) for the breach of contract claim, and in any event, there was no holding that limited

23  Section 2607(3)(A) to warranty claims as a matter of law.  *Worley v. Avanquest N. Am., Inc.*, C

24  12-04391 SI, 2013 WL 1820002, *1 n.2 (N.D. Cal. Apr. 30, 2013) (Judge Susan Illston).

25    Davis nevertheless contests that no notice was needed because "[d]efendants had

26  constructive notice of their breach of contract," given that "they intentionally designed

27  Advanced SystemCare to perform in breach of their express contractual obligations" (Opp. 19).

28

*United States District Court*
For the Northern District of California

1    The Court has considered whether or not the California courts would recognize a

2 "futility" or "actual knowledge" exception to Section 2607(3)(A), if and when such an issue

3 were presented to them. Indeed, Illinois law recognizes an "actual knowledge" exception, and

4 there are plausibly policy arguments in favor thereof. *See In re McDonald's French Fries Litig.*,

5 503 F. Supp. 2d 953, 956 (N.D. Ill. 2007) (Judge Elaine Edwards Bucklo). On the other hand, it

6 appears relatively easy for a consumer to comply with Section 2607(3)(A), and the burden of

7 doing so is so slight that the Court is unwilling to dispense with the notice required by Section

8 2607(3)(A) and unwilling to invite extensive satellite litigation into futility and/or actual

9 knowledge.

10    Finally, Davis claims that he *did* provide notice to defendants. In a declaration appended

11 to his first supplemental brief, Davis states that he "repeatedly attempted to contact [d]efendants

12 when the [s]oftware did not perform as advertised," and that when he "finally reached a live

13 representative . . . language barriers prevented them from providing [him] assistance with [his]

14 purchase" (Supp. Davis Decl. ¶¶ 2, 3). This does not show whether Davis was able to tell the

15 representative or otherwise inform defendants about the breach now alleged here, or whether any

16 such notice was given "within a reasonable time" after he discovered the alleged breach. *See*

17 Cal. Com. Code 2607(3)(A).

18    As to Claim Three, this order thus finds that the amended complaint fails to state a claim

19 upon which relief. Subject to the last paragraph of this order, the motion to dismiss Claim Three

20 is accordingly **GRANTED**.

21    **3.    CLAIM FOUR.**

22    Finally, defendants argue that Claim Four — alleging breach of the implied covenant of

23 good faith and fair dealing — should also be dismissed under Rule 12(b)(6). "The implied

24 covenant of good faith and fair dealing rests upon the existence of some specific contractual

25 obligation . . . [and] the implied covenant is limited to ensuring compliance with the express

26 terms in the contract, and cannot be extended to create obligations not contemplated in the

27 contract." *Bilodeau*, 2013 WL 320065 at \*13 (emphasis added).

28

United States District Court

For the Northern District of California

9

United States District Court

For the Northern District of California

1    As discussed above with the breach of contract alleged under Claim Three, this order

2   finds that the amended complaint sufficiently claims the "specific contractual obligation" needed

3   for Claim Four. This order further finds, however, that Claim Four duplicates Claim Three

4   because both rely on the same alleged acts and assertion that defendants failed to honestly

5   diagnose problems with and perform repairs to Davis' computer (*see, e.g.*, Amd. Compl. ¶¶ 81,

6   87, 91). In California:

7           If the allegations in a breach of implied covenant claim do not go
            beyond the statement of a mere contract breach and, relying on
8           the same alleged acts, simply seek the same damages or other
            relief already claimed in a companion contract cause of action,
9           they may be disregarded as superfluous as no additional claim is
            actually stated.
10

11   *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1395, 272 Cal. Rptr. 387,

     400 (Ct. App. 1990) (internal citation omitted). On that basis, several courts in our district, as
12
     well as the undersigned judge, have dismissed claims of breach of the implied covenant of good
13
     faith and fair dealing where those claims failed to go beyond the breach of contract claims
14
     alleged in those cases. *See, e.g.*, *Am. Marine Corp. v. Blue Shield of California*, No. C 11-00636
15
     WHA, 2011 WL 1399244 (N.D. Cal. Apr. 13, 2011); *Synopsys, Inc. v. ATopTech, Inc.*, C
16
     13-CV-02965 SC, 2013 WL 5770542 (N.D. Cal. Oct. 24, 2013) (Judge Samuel Conti); *Gross v.*
17
     *Symantec Corp.*, C 12-00154 CRB, 2012 WL 3116158 (N.D. Cal. July 31, 2012) (Judge Charles
18
     R. Breyer); *and Zepeda v. PayPal, Inc.*, 777 F. Supp. 2d 1215, 1221 (N.D. Cal. 2011) (Judge
19
     Jeremy Fogel). The same is true here.
20
             In light of the above, and in part because Davis does not dispute Claim Four as being
21
     duplicative of Claim Three, the motion to dismiss Claim Four is **GRANTED**. Again, this is
22
     subject to the last paragraph of this order.
23
                                            **CONCLUSION**
24
             To the extent stated, the motion to dismiss is **GRANTED**. The request for judicial notice
25
     is **DENIED AS MOOT**. Davis, however, may file a motion seeking leave to amend the operative
26
     complaint, noticed on the normal 35-day track. Such a motion must be filed **NOVEMBER 14,**
27
     **2014**. A proposed amended complaint must be appended to that motion. Davis should plead his
28
     best case. Moreover, the motion seeking leave should clearly explain how the amendments to

1  the operative complaint cure the deficiencies identified herein, and should include as an exhibit a

2  redline or highlighted version identifying all changes.  If such a motion seeking leave is not filed

3  by the November 14 deadline, this case will be closed.

4

5  **IT IS SO ORDERED.**

6

7  Dated:  October 31, 2014.



WILLIAM ALSUP

8  UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28